Jerome R. PERGAMENT and George J. London, suing on their own behalf and on behalf of all other stockholders of Kaiser-Frazer Corporation similarly situated and in the right of and on behalf of Kaiser-Frazer Corporation, Plaintiffs,

v.

Joseph W. FRAZER, Henry J. Kaiser, Edgar F. Kaiser, G. G. Sherwood, E. E. Trefethen, Jr., Clay P. Bedford, W. A. MacDonald, O. B. Motter, Hickman Price, Jr., Graham-Paige Motors Corporation, Otis & Co., Byrus Eaton, The Permanente Metals Corporation, Permanente Products Company, United States of America, Reconstruction Finance Corporation and Kaiser-Frazer Corporation, Defendants.

Civ. A. No. 7354.

United States District Court
E. D. Michigan, S. D.
April 5, 1954.

Samuel Chess, New York City, Fischer & Fischer, Detroit, Mich., Perlman,

Goodman, Hecht & Chesler, Chicago, Ill., for Pergament and others, plaintiffs.

Butzel, Eaman, Long, Gust & Kennedy, Detroit, Mich., Wilkie, Owen, Farr, Gallagher & Walton, New York City, for Kaiser-Frazer.

George E. Brand, George E. Brand, Jr., Detroit, Mich., Gordon Johnson, San Francisco, Cal., for Permanente.

Lemuel B. Schofield, Philadelphia, Pa., Lewis M. Dabney, Jr., Murray C. Bernays, New York City, Clair J. Killoran, Wilmington, Del., for objecting stockholders.

Norman Annenberg, New York City, for Berkwitz, and others.

Marcus, Kelman & Loria, Detroit, Mich., for Metzenbaum.

Griffiths, Williams & Griffiths, Detroit, Mich., for Lacks.

PICARD, District Judge.

In this matter this court has delayed the allowance of fees because we were aware that the case would be appealed to the Court of Appeals and perhaps higher. Our supposition came true and the Court of Appeals having by a two to one decision, Masterson v. Pergament, 6 Cir., 203 F.2d 315, affirmed the judgment of this court Pergament v. Frazer, 93 F.Supp. 13, and certiorari to the Supreme Court of the United States having been denied, Masterson v. Pergament, 346 U.S. 832, 74 S.Ct. 33, 98 L.Ed. 355, we are now in a position to pass upon the fees requested and hereby decree this order.

■ We do not deem it necessary to herein review the law in detail but the court believes it has full authority to grant or refuse fees under the circumstances since the rule seems to be that if the attorneys acting for certain stockholders have benefited the estate, directly or indirectly (here Kaiser-Frazer Corporation) fees may be allowed in substantial amount. Sant v. Perronville Shingle Co., 179 Mich. 42, 146 N.W. 212; State ex rel. Weede v. Bechtel, 244 Iowa 785, 56 N.W.2d 173.

We have reviewed all requests thoroughly and divided the petitions into five groups:

Group 1—Those who aided in arriving at the amount to be contributed by defendants or some of them to Kaiser-Frazer Corporation and who continued to support the proposed settlement;

Group 2—Those who may have contributed something to the settlement but opposed the settlement as finally arrived at;

Group 3—Those who came in after the settlement had been made while the case was already in court, some of which attorneys attended regularly and some of whom did not;

Group 4—One attorney who participated at the trial, was apparently opposed to the settlement, but finally decided to endorse it; and

Group 5—All others asking compensation.

■ There is no doubt that the firm of Perlman, Goodman, Hecht and Chesler, usually heard in court through Mr. Theodore E. Rein, and those associated with them, specifically including Samuel Chess and Fischer and Fischer, were effective in raising the amount of cash offered by defendants in settlement from $50,000 to $500,000. That group should receive fees to the extent of at least 20 percent of the additional $450,000 or $90,000. See Hornstein, The Counsel Fee in Stockholders' Derivative Suits, 39 Col. Law Rev. 784; Problems of Procedure in Stockholders' Derivative Suits, 42 Col. Law Rev. 574; and New Aspects of Stockholders' Derivative Suits, 47 Col. Law Rev. 1.

In the last named article the author devotes considerable attention to the question of what is a reasonable counsel fee to be awarded in cases of this nature.

He sets forth the fees awarded in stockholders' derivative suits brought in New York from 1918 through 1946, and judging by the amounts of the fees allowed in that state over the years a fee of 20 percent of the value of the benefit conferred upon the corporation is conservative. Much higher percentages have been allowed.

This court is not willing to hold, however, that Group 1's participation in urging or obtaining the guarantees is such as to warrant a special fee in view of what the court has in mind later. As we stated in our original opinion it has always been our impression that Mr. Henry J. Kaiser was anxious to save the Kaiser-Frazer Corporation if possible. However, he wanted to rid himself and the other defendants of these lawsuits (which can be easily understood) so that when the question of guarantees was advanced the Kaisers agreed to give those new guarantees only if they were relieved of the expense of trying these several lawsuits in other parts of the country. The court has never denied that this was of some benefit to the Kaisers and of tremendous benefit to Kaiser-Frazer Corporation but if there had never been any of these lawsuits the Kaisers were already on guarantees which, of course, did not assure future existence of Kaiser-Frazer, but did assure payment of certain debts. We believe that the erasure of the lawsuits was the real reason for the guarantees being given, together with the desire of the Kaisers to make a success of their venture into the automobile field which was being attacked so vociferously and, in some quarters, applauded.

This court does not believe, however, that this group of petitioners should be limited to the $90,000 fee to which they are undoubtedly entitled. As a matter of fact, it must be remembered that throughout this case a good share of the burden was carried by the firm of Perlman, Goodman, Hecht and Chesler. It not only aided in the agreement receiving endorsement of this court but it also was in court every minute of the action and participated in every question that came up. Certainly the Kaiser-Frazer Corporation benefited from their participation and we believe that a fair fee for the time spent, the energy and ability displayed and results obtained should be another $50,000.

No question has been raised as to the propriety of the amount of expenses as requested by the Perlman group but this court believes that as presented by petitioners they are a little high and allows the sum of $10,000 to the same firm or a total of $150,000, division among the group of fees and costs to be designated and made by the firm of Perlman, Goodman, Hecht and Chesler.

Group 2 is represented by Mr. Lemuel B. Schofield. The first suit started against defendant Kaiser-Frazer Corporation was on February 9, 1948, and those attorneys representing plaintiff Masterson included Mr. Schofield and others. Shortly thereafter a settlement was made between Kaiser-Frazer and Fleetwings on payment by Fleetwings to Kaiser-Frazer of $924,000. Fleetwings was controlled by the other Kaiser defendant firms and a very potent argument can be made that if it hadn't been for the starting of the Masterson suit perhaps different arrangements might have been made between Fleetwings and Kaiser-Frazer—and Kaiser-Frazer might have been given less. The court was told by counsel opposing payment of fees to the Schofield group that this $924,000 was paid because of a contract between Kaiser-Frazer and Fleetwings. Although requested by this court production of that contract has not been forthcoming and there is substantial evidence to indicate that were this issue alone before the court it could easily be held that the Masterson suit was partially responsible for prodding Fleetwings into making payment at the time it did, so 10 percent of that amount under the circumstances might have been reasonable payment to Masterson counsel on the theory that the suit was to a limited degree instrumental in adding

this to the settlement and as a gain to Kaiser-Frazer. Naturally, the institution of other suits was also inducive.

However, Mr. Schofield and other counsel for Masterson did not agree with the settlement as finally made and opposed it from every possible angle. We were convinced then and are still convinced that the Masterson suit was primarily instituted as an act of collusion to relieve others from certain obligations in New York or what appeared then to be possible obligations. And counsel for Masterson did not content themselves with reasonable opposition to the settlement but that opposition was bitter and vitriolic. It showed a desire not to help Kaiser-Frazer but if possible to tear it apart. Nothing good was said about the company itself or its product and no other reasonable offer of settlement was suggested by its opponents who continued their tactics right from the beginning until the Supreme Court refused certiorari. To some extent it is continuing today. Therefore, because of that bitter opposition this court refuses allowance of any fees to Mr. Schofield, et al., based on the Masterson suit on the theory that all good accomplished for Kaiser-Frazer by institution of the Masterson suit was more than offset by the Masterson group's attitude toward the settlement and the evident personal intent to injure Kaiser-Frazer at all costs rather than help the company or any Kaiser-Frazer stockholders.

It will be remembered, however, that this court at one time contemplated appointment of its own counsel. This would have been expensive. We also considered submitting the matter to a Master, which would likewise have been expensive. Instead of that we had no counsel. We heard the case without outside help and the main reason for that was the court's belief that because of the almost personal anti-settlement position of the attorneys included in the Schofield group this court would get every possible objection to the proposed settlement agreement that could be raised.

For the aid rendered to the court, whether intentional or not, we believe that an allowance should be made to the attorneys represented by the Schofield group in the sum of $32,500 plus the payment of $7,500 in expenses. The Schofield group as identified by this court includes Messrs. Lemuel B. Schofield, Marvin Comisky, G. Fred DiBona, Clair J. Killoran, Murray C. Bernays, Lewis M. Dabney, Jr., and Ernest P. LaJoie. This payment, however, depends entirely upon whether the suit started February 9, 1948, by James F. Masterson against the Kaiser-Frazer Corporation, et al., in the Wayne County Circuit Court, subsequently removed to this court; the suit started on June 30, 1948 by Eva Lefker against Kaiser-Frazer, et al., in a Delaware U. S. District Court; the suit started on July 9, 1948 by Hazel C. Fleming in a California state court; the suit started on July 2, 1948 by Otis & Co. against Kaiser-Frazer Corporation, et al., in a Delaware state court; and the suit started on May 10, 1948 by Michael Stella against the Kaiser-Frazer Corporation in New York are discontinued forthwith.

In Mr. Dabney's affidavit, which the court has read, he seems to be under the impression that we did not pass upon the "arms-length bargaining" charges made. We think we did. In fact in our opinion we specifically said that

> "We do not find any collusion, fraud, concealment or unfair dealing in arriving at the compromise and we hold there was 'arms-length bargaining.' "

The Schofield group will have sixty days in which to determine to either accept or reject this conditional order of payment. Otherwise no fees or costs will be allowed them.

■ In Group 3, in which the firms of Griffiths, Williams and Griffiths and Marcus, Kelman and Loria are placed, we can find no law that permits us to grant fees. As a matter of fact some of these attorneys were in and out of court so much that we don't know now whether

they really attended half the sessions. In any event they did not start any lawsuits before the settlement was made and when in court opposed the settlement from every angle they could. They have added nothing to the gain of the corporation and to permit them to receive fees would be setting a very bad precedent even if permissible. It would encourage derivative suits far beyond the equitable rights of a stockholder in a corporation.

We hold the same for Milton S. Lacks, a stockholder. He was an obstructionist from the beginning of this case until the end.

■ In Group 4 we find Norman Annenberg, attorney for some minor stockholders. Mr. Annenberg had an opportunity to contribute very much to this case and he started out to do that but after the first day evidently changed his mind. He's on the losing side. He contributed nothing until the case was submitted to this court and then presented a brief in favor of the settlement. He did, however, attend all sessions and was faithful in representing his clients. While we do not believe that he added to the settlement or returns to the corporation there was the moral effect of one who had opposed the settlement joining those in favor of it after hearing all the evidence and evidently being well versed in the facts and the law.

For that reason we believe that a small fee should be allowed Mr. Annenberg, and we place it at $1,000 with another $1,000 for expenses. Here we believe the court is perhaps generous but had the others taken the same position as Mr. Annenberg there would have been no appeal and the extra expenses to which the corporation was subjected would not have been incurred.

In Group 5 we place all others who have asked for fees, none of whom contributed to the settlement or were of aid to any gain received by the corporation. All of their petitions for fees and/or expenses are hereby denied.