224 F.2d 80
 Jerome R. PERGAMENT, Louis Dabney, Lemuel B. Schofield et al., Appellants,
v.
KAISER-FRAZER CORPORATION, Appellee.
Lewis M. DABNEY, Jr.
v.
KAISER MOTORS CORPORATION. Lemuel B. SCHOFIELD et al.
v.
KAISER MOTORS CORPORATION.
 No. 12246.
 No. 12255.
 No. 12256.
 United States Court of Appeals Sixth Circuit.
 June 7, 1955.
 
 Simon H. Rifkind, New York City, Samuel L. Chess, New York City, Perlman, Goodman, Hecht & Chesler, Chicago, Ill., Fischer & Fischer, Detroit, Mich., on brief, for Jerome R. Pergament et al.
 Lewis M. Dabney, Jr., New York City, for Lewis M. Dabney, Jr.
 Lemuel B. Schofield, Philadelphia, Pa., G. Fred DiBona and Marvin Comisky, Philadelphia, Pa., Clair John Killoran, Wilmington, Del., Murray C. Bernays, New York City, Ernest P. LaJoie, Detroit, Mich., on brief, for Lemuel B. Schofield et al.
 Rockwell T. Gust, Detroit, Mich., Butzel, Eaman, Long, Gust & Kennedy, Detroit, Mich., Wilkie, Owen, Farr, Gallagher & Walton, New York City, A. Hilliard Williams, Philip T. Van Zile, II, Detroit, Mich., on brief, for Kaiser Motors Corp.
 Before SIMONS, Chief Judge, and MARTIN and McALLISTER, Circuit Judges.
 PER CURIAM.
 
 
 1
 The appeals, heard together upon the same record, present complaints to allowance and disallowance of attorneys' fees and expenses to counsel for stockholders of the Kaiser-Frazer Corporation, in derivative suits against directors of Kaiser-Frazer and related corporations. The so-called "Chess Group" of attorneys, representing Pergament and other stockholders, negotiated and were proponents of a settlement with the Kaiser interests. The so-called "Schofield Group," representing Masterson, and Dabney, individually, attorney for Stella, and other stockholders, opposed the settlement, appealed from the order approving it, and unsuccessfully sought review of our affirmance in the Supreme Court by certiorari. The opinion of the District Judge, approving the settlement, Pergament v. Frazer, 93 F. Supp. 13, and our decision, affirming, Masterson v. Pergament, 203 F.2d 315, sufficiently disclose the nature of the controversy and need not here be reviewed.
 
 
 2
 After denial of certiorari by the Supreme Court, 346 U.S. 832, 74 S.Ct. 33, 98 L.Ed. 355, the attorneys representing the plaintiffs below presented to the District Judge their applications for fees, and after full hearing, the Court allowed the Chess Group $140,000.00 for services and $10,000.00 for expenses; the Schofield Group $32,500.00 for services and $7,500.00 for expenses. The allowance to the Schofield Group was, however, conditioned upon its securing the dismissal of various stockholders' actions in Delaware, California and New York, within sixty days from the entry of the order, with the proviso that no fees or costs would be allowed unless the condition was fulfilled.[1]
 
 
 3
 Important elements of the consideration passing from the Kaiser interests to the Kaiser-Frazer Corporation supporting the settlement included the personal guaranty by Kaiser of a 10-year $34,000,000.00 loan from R.F.C. to Kaiser-Frazer, secured by a deposit of Kaiser of $10,000,000.00 in collateral, the purchase by Fleetwings, a Kaiser controlled corporation from Kaiser-Frazer, of certain presses and related equipment, at book value, which was over $319,000.00 in excess of their recoverable value, and the payment by the Kaiser interests of cash in the sum of $500,000.00. The Court considered that 20% of the value of the benefit conferred upon the corporation reasonably measured the value of the attorneys' services to it, but applied that percentage to only $450,000.00 of the cash, allowed the Chess interests an additional $50,000.00 for its services in securing approval of the settlement and following through upon the appeal to this Court and the denial of ceriorari by the Supreme Court, and scaled its allowable expenses down to $10,000.00 from the $18,534.00, claimed, because he thought that amount seemed "a little high." It allowed nothing to the Schofield Group for helping to procure the settlement or for starting the Masterson suit because of its "bitter and vitriolic opposition to the settlement" and because the Masterson suit was primarily instituted "to relieve others from certain obligations in New York." He was of the view that "it showed no desire to help Kaiser-Frazer but, if possible, to tear it apart." However, it thought the Schofield Group was of value to the Court because it explored every possible objection to the settlement that could be raised, and saved the expense of disinterested counsel or reference to a master. It, therefore, allowed Schofield for this aid the sum of $40,000.00 for services and expenses.
 
 
 4
 The Chess Group contends that the allowance to it was inadequate because it failed to take account of the entire $500,000.00 in cash as a benefit achieved by it for Kaiser-Frazer, because it failed to allow any fees for securing the Kaiser guarantees of the R.F.C. loan, and the Kaiser purchase of the presses, and because of its failure to recover all of its expenses. The Schofield Group urges that it should have received fees based upon the settlement and because it was a pioneer in the litigation, having started its suit several months prior to that of Chess, and that consideration should be given to certain pre-settlement payments by the Kaiser interests to the corporation.
 
 
 5
 Dabney in his separate appeal supports the Schofield brief in the Masterson case and obviously has an interest in the fees allowed, or to be allowed, to Schofield. His additional grievance is that the Court had no power to control his suit in another Federal Court as a condition for the awarding of fees to Schofield.
 
 
 6
 There are certain legal principles which should govern the allowance of fees. It was said in an early case, Trustees v. Greenough, 105 U.S. 527, 537, 26 L.Ed. 1157: "The court below should have considerable latitude of discretion on the subject, since it has far better means of knowing what is just and reasonable than an appellate court can have." In Re Detroit International Bridge Co., 6 Cir., 111 F.2d 235, 237, we catalogued some of the criteria to be taken into consideration in fixing compensation: "The extent and nature of the services; the labor, time and trouble involved; the results achieved; the character and importance of the matter in hand; the value of the property or the amount of money involved; the learning, skill and experience exercised; whether the fee is absolute or contingent; and the ability to pay." Somewhat similar were the circumstances considered in Harris v. Chicago Great Western Ry. Co., 7 Cir., 197 F.2d 829, 832. We derive from these cases, and many others examined, that the findings of the District Court should be given great weight; that they should not be set aside unless clearly erroneous, based upon unsound reasoning or not in response to substantial evidence.
 
 
 7
 In appraising the benefit to the Kaiser-Frazer Company of the cash involved in the settlement, no contention is made that 20% of the amount of recovery does not reasonably measure the value of services rendered. We fail to see, however, any soundness in limiting the allowance based upon this consideration to $450,000.00 of the amount received merely because $50,000.00 of that amount was included in the first settlement offer by the Kaiser interests. No settlement offer had been made until approximately a year and a half after the suit was started. In the meanwhile, much investigation had been made by the many highly competent lawyers of the Chess Group and they succeeded in obtaining from the District Court a decision, 93 F.Supp. 9; that the Court had jurisdiction of the subject matter and the parties and that the defendants were required to answer the complaint on its merits. It was only after this decision that the Kaiser interests initially proposed compromise and settlement. This was a proposal, based upon a number of considerations. It was brought about not only by the derivative suit but by the supplemental proceedings. The fact that the first offer was made by the defendants and not by the stockholders is unimportant. See 39 A. L.R.2d 585, § 5. Waterman Corporation v. Johnston, Sup., 106 N.Y.S.2d 813; Id., 204 Misc. 587, 122 N.Y.S.2d 695; Martin Foundation, Inc. v. Phillips-Jones Corp., 283 App.Div. 729, 127 N.Y.S.2d 649. The total benefit to the Kaiser-Frazer Corporation was $500,000.00 and not $450,000.00. The percentage should have been applied to the whole amount and not to part of it.
 
 
 8
 The Kaiser guarantees and the offer to purchase the Kaiser-Frazer presses at an amount in excess of their recoverable value should also have been given consideration. These benefits to the corporation were considered by the District Court, and by us, as of great value to Kaiser-Frazer. In the words of the District Judge, it permitted Kaiser-Frazer "to breathe again," and we concluded that we were not able to say that the guarantees alone may not have been sufficient of themselves to sustain the settlement. The District Court thought that Henry Kaiser, being already on earlier guarantees, would have given others anyway because he had done so before and was motivated by a strong desire to make a success of the venture. Nevertheless, the record shows that the guarantees would not have been given unless he was relieved of the expense and trouble of trying the many far-flung lawsuits in other parts of the country. The Court should have considered these elements of the proposed settlement.
 
 
 9
 This is not to say, however, that the benefits derived by Kaiser-Frazer, because of the guarantees and the purchase of presses, should be given a fantastic valuation. There are other considerations to be taken into account. While the R.F.C. loan saved the corporation from immediate liquidation and gave it expectation of rehabilitation, there was no certainty that its hope would be realized. Kaiser-Frazer was to subject itself to a primary obligation of $34,000,000.00 by its loan from the R.F.C. The sellers' market for automobiles had disappeared. It was in a field highly competitive with great manufacturers of long established experience and reputation. If ability to pay is an element in the appraisal of benefits, it was still not in position to pay exorbitant fees. It needed the avails of the R.F.C. loan for payment of pressing debts, for reorganizing its sales agencies and for retooling and redesigning its product. Moreover, any increase in fees based upon these items must be added to substantial compensation already determined and it has been recognized that in setting attorneys' fees, it is common practice to decrease percentage of fees in relation to benefits as the amount of recovery increases, Winkelman v. General Motors Corp., D.C., 48 F.Supp. 504. Further, the Chess Group was not entitled to the sole credit for securing approval of the settlement in the District Court and its affirmance by us. The very able attorneys for the Kaiser-Frazer Company had a large share in these results. Balancing all of these considerations, we think it not unreasonable for an additional $25,000.00 to be allowed the Chess Group for its efforts in securing approval of a settlement that included the Kaiser guarantees and an agreement by Kaiser interests to purchase the Kaiser-Frazer presses at their book value.
 
 
 10
 The expenses incurred by the Chess Group were set forth in an itemized schedule, under oath. They were not challenged by the appellee, or their necessity questioned by the Court, and an examination of the items discloses none that seems improvident. Moreover, in a letter to the Court, counsel for the defendant stated explicitly that they saw no reason to doubt that the sums for which reimbursement was sought were actually and in good faith spent in promoting the objectives sought. Failure to allow them in full, because they "seemed too high," was mere judicial fiat, not based upon evidence. They should have been allowed as claimed. Hornstein, 39 Columbia Law Review 784, 790, Steinberg v. Hardy, D.C., 93 F.Supp. 873.
 
 
 11
 While the Masterson suit was filed several months prior to that of Pergament, the Schofield Group did not participate in the present case until brought into it by the order to show cause. Schofield had nothing to do with achieving the settlement. Kaiser undertook to negotiate the compromise with attorneys who represented stockholders not connected with Otis & Company, his bitter adversary in another suit. Had Schofield been invited to participate in the negotiations, it is obvious that no settlement would have been reached. We perceive no abuse of discretion, under all of the circumstances, in the allowances for fees and expenses to the Schofield Group. The District Judge was better able than we are to appraise the interrelationship of the Masterson suit with objectives of Otis & Company and, in any event, no great significance is to be attached to the fact that Masterson won the race to the courts.
 
 
 12
 Dabney is allied with Schofield and must derive his fee, if any, through the allowance to Schofield. His particularized complaint is in respect to the condition attached to the Schofield allowance, namely, the dismissal of all other suits. All have now been dismissed except the Stella suit in New York, wherein the plaintiffs are represented by Dabney. The Stella action is being pressed, notwithstanding the approval of the settlement and the request of Schofield that it be dismissed. The District Court for the Southern District of New York dismissed it by summary judgment but an appeal therefrom was still pending in the Court of Appeals for the Second Circuit when this case was briefed.[2] The controversy here is in respect to an allowance of fees and we fail to see abuse of discretion in imposing a condition upon such allowance in respect to a consideration, without which no settlement could have been reached. We shall not here reconsider our affirmance of the order approving the settlement. Whether the dismissal of the Stella suit should be eliminated from the condition attached to the allowance of the Schofield fees or whether the sixty-day limit for performance should be extended because of the present appeal and the New York judgment are matters which are in the first instance for the District Judge to decide, upon remand.
 
 
 13
 Upon full consideration, it is ordered 1) that the allowance of fees to the Chess Group, based upon the cash consideration for the settlement, be increased by $10,000.00; 2) that the attorneys in the Chess Group be allowed an additional $25,000.00 for services, based upon the Kaiser guarantees and the purchase of presses; 3) that the attorneys for the Chess Group be allowed the additional sum of $8,534.94 for expenses. The order is in all other respects affirmed, with authority to the District Judge to reconsider the condition attached to the allowance of fees to the Schofield Group.
 
 
 14
 Amended and, as amended, affirmed, and cause remanded, for consideration of subjects herein noted.
 
 
 
 Notes:
 
 
 [1]
 D.C., 132 F.Supp. 323
 
 
 [2]
 Judgment dismissing the Stella case in New York affirmed Stella v. Kaiser, 218 F.2d 64, rehearing denied 221 F.2d 115
 
 
 
 15
 MARTIN, Circuit Judge (dissenting).
 
 
 16
 I am unable to concur in the majority opinion in this case, for the reason that I think United States District Judge Picard did not abuse his discretion in his allowance of fees to the attorneys in this litigation. In my judgment, the fees allowed by him and the expense allowances, as well, were quite substantial; and, this being true, I think the court of appeals should let the matter abide within the sound discretion of the experienced district judge.
 
 
 17
 The determination of fees in cases of this character is, in my view, a matter concerning which the district judge is in better position to reach a correct conclusion upon the considerations involved than is a reviewing court. I would affirm the judgment of the district court.