Jules E. ANGOFF et al., Appellants,

v.

Bernard GOLDFINE et al., Appellees.

Harold BROWN et al., Appellants,

v.

Bernard GOLDFINE et al., Appellees.

Nos. 5472, 5473.

United States Court of Appeals
First Circuit.

Heard April 10, 1959.

Decided Sept. 10, 1959.

Abraham L. Pomerantz, New York City, with whom Jules E. Angoff, Boston, Mass., William E. Haudek, New York City, and Irvin M. Davis, Boston, Mass., were on the brief, for Angoff and others, appellants.

Harold Brown, Boston, Mass., with whom Arnold M. Marrow, Boston, Mass., was on the brief, for Harold Brown and others, appellants.

Henry E. Foley, Boston, Mass., with whom Laurence S. Fordham and Foley, Hoag & Eliot, Boston, Mass., were on the brief, for East Boston Co. and Boston Port Development Co., appellees.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

WOODBURY, Chief Judge.

These are appeals by counsel for the original plaintiff and counsel for intervening plaintiffs in a minority stockholder's derivative action from so much of a substitute judgment approving a stipulation of settlement of the action as awarded the appellants counsel fees and expenses. The assertion is that the court below based its awards on incorrect legal principles and that the awards are grossly inadequate.

 The facts essential for federal jurisdiction over the main cause of action based on the diversity of the citizenship of the parties thereto and the amount in controversy between them, Title 28 U.S.C. § 1332(a)(1), are clear and not in dispute. And, although we have found no case discussing the point, we think it clear that jurisdiction over the main cause of action necessarily carries with it jurisdiction, in the exercise of the "historic equity jurisdiction of the federal courts," Sprague v. Ticonic Nat. Bank, 1939, 307 U.S. 161, 164, 59 S.Ct. 777, 779, 83 L.Ed. 1184, to award fees and expenses in appropriate situations to counsel for a successful plaintiff. It was taken for granted in Meddaugh v. Wilson, 1894, 151 U.S. 333, 14 S.Ct. 356, 38 L.Ed. 183, and in Singer v. General Motors Corp., 2 Cir., 1943, 136 F.2d 905, and so do we, that counsel may himself take an appeal from an award of his fees and expenses, and in Trustees v. Greenough, 1881, 105 U.S. 527, 531, 26 L.Ed. 1157, it was held that an order fixing counsel fees, though incidental and collateral to

the main cause, is so far independent of it and so finally dispositive of a particular matter "as to make the decision [as to counsel fees] substantially a final decree for the purposes of an appeal." See also Sprague v. Ticonic Nat. Bank, supra, 307 U.S. 168, 169, 59 S.Ct. 780, 781; and Cohen v. Beneficial Industrial Loan Corp., 1949, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528. We therefore conclude that this court has appellate jurisdiction under Title 28 U.S.C. § 1291.

With the question of federal jurisdiction and the question of appellate jurisdiction which we mentioned but were not required to decide in In re Heddendorf, 1 Cir., 1959, 263 F.2d 887, out of the way, we turn to the merits.

The facts appear to some extent in the above opinion of this court and in detail in the opinion and supplemental opinion of the District Court respectively disapproving the first and approving the second compromise settlement, so-called, of the original stockholder's derivative action. Heddendorf for Benefit of East Boston Co. v. Goldfine, D.C.1958, 167 F. Supp. 915. For present purposes they can be summarized:

The appellants, Jules E. Angoff and Irvin M. Davis, both members of the Massachusetts bar, in conjunction with the New York law firm of Pomerantz, Levy & Haudek, all of whom may be conveniently referred to collectively as the Pomerantz group, representing one George B. Heddendorf, a citizen of Maine, filed a complaint in the court below on April 26, 1956, against the East Boston Company, as Massachusetts corporation in which Heddendorf had held shares since August 1, 1949, and also against Bernard Goldfine, the largest stockholder therein, and other individual defendants, shareholders of East Boston and officers and directors of its subsidiary, Boston Port Development Company, another Massachusetts corporation, all of whom were citizens of Massachusetts, charging them, speaking generally, with various acts of mismanagement of corporate affairs to their own pecuniary benefit and to the detriment of the corporations

and the minority shareholders in East Boston.

The original plaintiff, Heddendorf, who was employed by and owned 20% of the stock of Fayette Associates, Inc., a Maine corporation engaged in "management consultant" services, began to investigate the affairs of East Boston and Boston Port in the fall of 1951. His investigation was hampered by the unwillingness of Goldfine to permit access to the books and records of the corporations and by the failure of the corporations to file either income tax returns or the reports required by the Securities Exchange Act of 1934, 15 U.S.C.A. § 78a et seq. In 1952 Angoff and Davis were retained by Heddendorf and in December of that year mandamus proceedings were initiated in the courts of the Commonwealth of Massachusetts to obtain access to the books and records of the corporations. It is not necessary to rehearse the ups and downs of this protracted ancillary litigation which terminated in dismissal late in 1956. It is enough to say that Heddendorf's counsel claim that under the threat of this disclosure proceeding, but before the main action in the court below was commenced, the "defendants rectified two of their more glaring misdeeds" by paying Boston Port some $180,000 in back interest on a mortgage held by that corporation on a business property in Boston called the Little Building, and by cancelling a $50,000 mortgage held by Mrs. Goldfine on two pieces of property it owned on Boylston Street.

In 1956 Abraham Pomerantz of the firm of Pomerantz, Levy & Haudek, an attorney of large experience in handling stockholders' derivative actions, became counsel for Heddendorf and assumed the leadership of his group of attorneys. He engaged the New York accounting firm of David Berdon & Co. to provide investigative services and in April of that year the present action was brought in the court below.

Lengthy proceedings followed in the District Court, including many motions of one kind or another, the taking of a number of depositions and the filing of several interrogatories and answers thereto. In March, 1958, after the case had many times been set for hearing but postponed at the request of all counsel, the parties of record submitted a stipulation settling the action and moved for judgment approving the same in accordance with Rule 23(c), F.R.Civ.P., 28 U.S. C.A., which provides: "A class action shall not be dismissed or compromised without the approval of the court." Hearings on this motion were held on April 16, 29 and 30, 1958, during which the appellant Galdi, an accountant and shareholder in East Boston since 1952, represented by his counsel, the appellant Harold Brown of the Massachusetts bar, appeared in opposition to the settlement and was allowed to intervene. At the same time other persons represented by Brown, some of whom had acquired their stock in East Boston prior to 1946, were also granted leave to intervene in opposition to the settlement.

In essence this proposed settlement provided that over a two-year period Goldfine would pay $400,000 to the subsidiary, Boston Port, that two parcels of real property standing in the name of a straw would be conveyed to Boston Port, that Boston Port would be declared to have no valid claim, other than its mortgage of record, to the business property in Boston known as the Little Building which Goldfine had acquired in 1946, that Goldfine's payments would constitute full settlement of all claims with respect to any transaction alleged in the complaint and that the action would be dismissed with full prejudice. On May 16, 1958, the District Court entered an order rejecting this settlement and appointing a permanent receiver of all the properties of both corporations. The basis for the court's action denying the motion for leave to settle the action, as expressed in its memorandum opinion of even date, was that the settlement made insufficient allowance for Boston Port's claim to the Little Building, and made no provision for the appointment of a receiver of the corporations, as the plaintiff had demanded in his complaint, and thus failed to

assure an end to corporate mismanagement. Four days later, on May 20, 1958, the court revoked its order appointing a receiver, and on June 18, 1958, following further negotiations between counsel and after due notice to stockholders, a hearing was held on a second proposed settlement. This hearing was continued on September 22, 1958, at which time it was modified, and still further amendments were made in open court at another hearing on November 3, 1958.

By the terms of this second proposed settlement, as amended, Goldfine was to pay Boston Port $325,000 in full settlement of all claims other than its claim to the Little Building, the Little Building claim was to be settled by Goldfine's payment of $337,500, *pro rata* to the minority stockholders of East Boston, the two other parcels of Boston business property, as provided in the first stipulation for settlement, were to be conveyed to Boston Port by the straws in whose names the properties stood, both East Boston and Boston Port were to be liquidated, the defendants were not actively to participate further in their management, and Boston Port was to pay all allowances made by the court for expenses including counsel and accounting fees. After withholding approval of this proposed settlement pending further disclosures by the principal defendant, Goldfine, the court entered an order on December 10, 1958, approving it. And on the same day the court ordered that on December 29 it would hear applications by counsel, accountants, the receiver and others for compensation, and that applications for the allowance of compensation were to be filed with the court for public inspection not later than one week before the date set for hearing.

Hearing was held in accordance with the direction of the court at which there was considerable colloquy between court and counsel in the course of which counsel for the appellees at the court's request and after an opportunity for consultation stated: " * * * we have come to the conclusion that the defendants that we represent would not object to a maximum of $100,000 for all counsel, which we believe is generous compensation for what has been done here. We feel that, in addition, there should be an allowance made for expenditures, charges of the accountant," meaning, it was then explained, the accountant associated with Mr. Pomerantz. On the next day, without filing an explanatory opinion the court entered an order discharging the receiver it had appointed and awarding the gross sum of $62,689.27 "as compensation not merely for professional services but also for all expenses and other recoverable items. * * * " It awarded the Pomerantz group of attorneys, David Berdon & Co., their accountants, Fayette Associates, Inc., and George B. Heddendorf, the plaintiff, who collectively had asked for the gross sum of $220,000, plus over $8,000 for their expenses, the lump sum of $45,000. It awarded Harold Brown and Joseph Galdi, $5,000, and it awarded the receiver, who has not appealed and who had applied for a fee of $700 for himself, a fee of $1,800 for his counsel, and submitted expenses totaling $189.27, the full amount requested, $2,-689.27. The balance was awarded to other counsel in the case who have not appealed. Subsequently, on January 16, 1959, the court entered a substitute judgment formally approving and implementing the execution of the second settlement agreement, as amended, and affirming its order awarding compensation to counsel and others. The present appeals are from "so much" of the order of December 30, 1958, and of the judgment of January 16, 1959, as awarded "fees and expenses" to the appellants, the Pomerantz group and those associated with them, and Galdi and his counsel Brown.

It is conceded by the parties and too well settled to require citation of the authorities that in awarding fees to counsel and others in stockholders' derivative actions the district courts are to be governed by the standard of reasonableness with reference to the particular facts of each case. Nor is there any dispute that the following factors are to be carefully considered and weighed in fixing the

amounts of compensation to be awarded in cases of this sort. These factors are: the amount recovered for the corporation; the time fairly required to be spent on the case; the skill required and employed on the case with reference to the intricacy, novelty and complexity of issues; the difficulty encountered in unearthing the facts and the skill and resourcefulness of opposing counsel; the prevailing rate of compensation for those with the skill, experience and standing of the attorneys, accountants or others involved; the contingent nature of the fees, with the accompanying risk of wasting hours of work, overhead and expenses (for it is clearly established that compensation is awarded only in the event of success); and the benefits accruing to the public from suits such as this. And these criteria have frequently been spelled out by the courts. See particularly Pergament v. Kaiser-Frazer Corp., 6 Cir., 1955, 224 F.2d 80, in which the court, citing its earlier opinion in In re Detroit International Bridge Co., 6 Cir., 1940, 111 F.2d 235, 237, catalogued some of the factors to be taken into consideration in fixing compensation in these cases. See also the frequently cited opinion in Murphy v. North American Light & Power Co., D.C. S.D.N.Y.1940, 33 F.Supp. 567, and other cases to be referred to hereinafter.

The appellants contend that the court below rejected outright some of the factors listed above and that it either overlooked or gave insufficient weight to others. And they contend that in any event the court below, in addition to applying incorrect standards, abused its discretion by fixing fees unreasonably low. In support of their contentions they can point only to remarks made by the court from the bench during the hearing on the allowance of fees. The appellees, on the other hand, while not disagreeing very much with the appellants' assertion of the legal principles involved, contend that the court below did not fall

into the errors asserted. And they in turn point to other remarks made by the court during the hearing on the allowance of fees to support their contention.

We are seriously hampered in the performance of our appellate function by the failure of the court below to indicate the reasons for its actions in a memorandum opinion. The consequent necessity for us, as for counsel, to rely upon perhaps more or less casual remarks of the court from the bench makes it exceedingly difficult if not impossible for us to decide the issues presented. For such remarks are often made only to develop, test or illuminate an argument and usually cannot be relied upon as expressions of considered, mature views on tendered issues either of law or fact.

One matter does emerge clearly, however, and that is that while the court apparently recognized that the Pomerantz group were entitled to compensation for the work they did on the mandamus proceeding in the Massachusetts court, as they were for other work done in preparation of the main case, it refused to take into consideration the benefits, amounting in gross to about $230,000, accruing to Boston Port prior to the bringing of this action, it is alleged, by reason of that mandamus proceeding.[1] It definitely appears from colloquy during the hearing on the allowance of fees that the court in fixing fees would not give any consideration whatever to any *ante litem* benefit accruing to Boston Port. Furthermore, in its order of December 30, 1958, fixing fees the court categorically stated that the amount awarded to the Pomerantz group and their associated accountants, etc. " * * * is not in compensation for any benefits fully procured by the corporate defendants *ante litem motam*."

We cannot be sure of the court's reasons for this action. From what we can glean from the record it may have thought that in awarding fees it had no

1. That is to say, the payment by Goldfine of $180,000 in back interest on a mortgage held by Boston Port on the Little Building and the cancellation of the $50,000 mortgage on Boston Port's property held by Mrs. Goldfine, to which we referred earlier in this opinion.

jurisdiction to take into account any benefits accruing to the corporation prior to the time that a pleading was filed in the federal court, or the court may have felt that although it had jurisdiction it had discretionary power not to exercise it. There may also be a suggestion in the colloquy that the complaint did not clearly allege failure to make payment of interest on the one mortgage or claim cancellation of the other, and that it was against public policy to broaden the pleadings in this type of litigation.[2]

■■ No authority squarely in point has been cited to us, nor have we found any ourselves. Nevertheless we feel that the court below, whatever its reasons may have been, erred in refusing in making its award of fees to give any consideration whatever to the claim that Boston Port benefited to the extent of approximately $230,000 as a result of the mandamus proceeding brought in the Massachusetts court.[3] It is true that that was another proceeding in another court. But it was brought in aid of the instant case and so was ancillary to it. If it was reasonably necessary to bring the mandamus proceeding in aid of the present case, and if that proceeding in fact produced a benefit to the corporation on behalf of which the main action was brought, we fail to see why that benefit should not be considered in fixing counsel fees and expenses in the main action, for we do not think an attorney's compensation should be made rigidly to depend upon the precise means by which a fund is recovered for a victimized corporation.

Dottenheim v. Emerson Electric Mfg. Co., D.C.E.D.N.Y.1948, 77 F.Supp. 306, although clearly distinguishable, is authority for the proposition that an attorney is entitled to an award of compensation based on benefits obtained by a corporation as a result of his efforts short of bringing suit. For, as the court in that case pointed out, it would be penalizing efficiency and expediency, and, indeed, it would hardly be reasonable, to say that a stockholder should be entitled to his expenses if he needs to bring suit but that he should be denied reimbursement if the same benefits resulted to the corporation without the necessity of legal proceedings and at less expense.

The remarks of the Court in Sprague v. Ticonic Nat. Bank, 1939, 307 U.S. 161, 167, 59 S.Ct. 777, 780, 83 L.Ed. 1184, are also pertinent. In that case the plaintiff, suing only on her own behalf, had established the right through *stare decisis* for others similarly situated to recover, and then she petitioned for attorney's fees to be paid out of the fund her efforts had made available for all. That case, of course, is also clearly distinguishable from this one. But in it the Court indicated the general policy to be followed by a court of equity in dealing with fee allowances, saying: "But when such a fund is for all practical purposes created for the benefit of others, the formalities of the litigation—the absence of an avowed class suit or the creation of a fund, as it were, through *stare decisis* rather than through a decree—hardly touch the power of equity in doing justice as between a party and the beneficiaries of his litigation. As in much else that pertains to equitable jurisdiction, individualization in the exercise of a discretionary power will alone retain equity as a living system and save it from sterility."

■ Moreover, a cardinal principle of equity is that once there is equitable jurisdiction, as there certainly is to award fees in these cases, equity has jurisdiction to afford complete relief. And,

---

**2.** We find no merit in this suggestion. It seems to us from reading the complaint that fairly construed it alleged in substance the wrongs alleged to have been rectified *ante litem*. Furthermore, even if these wrongs were not strictly within the framework of the pleadings, at least they were considered with the express or implied consent of the parties and under Rule 15(b) should have been treated as though raised by the pleadings.

**3.** We find no merit in the appellee's contention that the appellants at the hearing waived any right to have this benefit taken into account in figuring their compensation.

one of the basic functions of equity is to prevent a multiplicity of actions. Combining the foregoing general propositions we come to the view that it was not necessary, as the court below hinted in colloquy, for the Pomerantz group to resort to the Massachusetts courts for an award of fees based upon the alleged results of the mandamus proceeding. We think that if they can show that the mandamus proceeding was reasonably in aid of the main action, and that it in fact produced benefits to the corporations, they are entitled to have those benefits taken into account in figuring the amount of compensation to be awarded them in the main action.

This case must therefore go back to the court below for it to consider the Pomerantz group's contention that, prior to the commencement of the instant action in the court below and during the pendency of the petition for a writ of mandamus in the Massachusetts Superior Court, the defendant, Goldfine, paid $180,000 in back interest on a mortgage held by Boston Port on the Little Building and caused the discharge of a $50,000 mortgage held by his wife on certain Boylston Street properties belonging to Boston Port, and that the Pomerantz group is entitled to have those benefits reflected in their compensation since the petition for mandamus was the efficient cause of the two transactions.

Some of the other contentions advanced by the appellants call for comment.

They contend that the court in fixing its awards failed to give consideration to the element of uncertainty of receiving any compensation at all in cases such as this.[4] It is true that the court below at the hearing expressed itself in vigorous language as strongly opposed on ethical grounds to awarding counsel fees on a contingent basis. There are certainly good grounds for this attitude. Never-

theless it was established long ago that agreements to pay a contingent compensation for professional legal services of a legitimate character is not in violation of federal law or public policy, even when prosecuting claims against the United States. Stanton v. Embrey, 1876, 93 U.S. 548, 556, 23 L.Ed. 983; Taylor v. Bemiss, 1884, 110 U.S. 42, 45, 46, 3 S.Ct. 441, 28 L.Ed. 64. Nor are contingent fees condemned outright by the Canons of Professional Ethics of the American Bar Association. See Canon 13 which provides:

> "A contract for a contingent fee, where sanctioned by law, should be reasonable under all the circumstances of the case, including the risk and uncertainty of the compensation, but should always be subject to the supervision of a court, as to its reasonableness."

Incidentally, we think it can hardly be said as a general proposition that counsel who conscientiously satisfies himself of the merits before taking on an indigent plaintiff's case on a contingent basis is necessarily any less ethical than counsel who vigorously defends a clearly meritorious case because for so doing he is in receipt of a fat fee from a wealthy defendant.

However, the appellants by no means definitely establish from the vigorously expressed views of the court on the ethics of contingent fees that the court did not consider the contingency of compensation a factor for its consideration in awarding fees. For the court said to Mr. Pomerantz, who had been arguing for consideration of the element of the monetary risk to counsel in cases of this sort: "If you mean the uncertainty of compensation in a particular litigation is a factor —of course it is a factor."

Nor do we think that on the record before us the appellants have succeeded in showing that the court below erroneously based its awards on the amount of the

---

4. It is not disputed, and there is such overwhelming authority for the proposition that the contingency of compensation in these cases is a factor to be considered, that citation of cases is hardly necessary. See, however, Pergament v. Kaiser-Frazer Corp., 6 Cir., 1955, 224 F.2d 80, and for a good statement of rationale Steinberg v. Hardy, D.C.Conn. 1950, 93 F.Supp. 873.

benefits flowing to minority stockholders rather than upon the full amount of the corporate recovery, as the undisputed authorities require. See United States v. Moulton & Powell, 9 Cir., 1951, 188 F.2d 865, 870, and cases cited. The same may also be said with respect to the contentions of the appellants that the court applied other erroneous standards in fixing their fees.

We now turn to the appellants' contention that the court below abused its discretion by awarding them unreasonably small fees.

The gross amount of the fees awarded, particularly in the light of the concession of counsel for the appellees that they would not object to an award of $100,000 as counsel fees alone, is certainly small. But we do not think that this is necessarily to be attributed to the court's rather openly indicated dislike for and mistrust of this sort of litigation.

No doubt it is true that minority stockholders have sometimes abused their right of action. But so also have plaintiffs in many types of actions. And the courts are by no means powerless to handle strike suits of this kind. See May v. Midwest Refining Co., 1 Cir., 1941, 121 F.2d 431. On the other hand there are certainly meritorious minority stockholders' suits, and this appears to be one of them, and it is well recognized that the minority stockholder's derivative right of action is not only his legal remedy for corporate mis-management but also is a powerful deterrent to greedy corporate management generally. And this prophylactic aspect of suits of this kind has been held to warrant a liberal attitude in awarding fees. See Murphy v. North American Light & Power Co., D.C.S.D. N.Y.1940, 33 F.Supp. 567, 571, in which it is said: "Allowances in causes of this kind, however, should not be niggardly for appetite for effort in corporate therapeutics should, as in salvage and in bankruptcy cases, be encouraged." See also Smolowe v. Delendo Corp., 2 Cir., 1943, 136 F.2d 231, 241, 148 A.L.R. 300, in which with respect to a somewhat analogous situation the court said: "Since in many cases such as this the possibility of recovering attorney's fees will provide the sole stimulus for enforcement * * * the allowance must not be too niggardly."

Nevertheless, there may be reasons for the court's modest allowance to counsel in this case. While the Pomerantz group certainly pulled the laboring oar in preparing the case for trial and negotiating its settlement, their first stipulation for settlement was rejected, in part on the ground that it made insufficient allowance for Boston Port's claim to the Little Building. It may well be that the Pomerantz group was not to blame for this, for their client became a stockholder in 1949, whereas Goldfine acquired the Little Building in 1946, so that, under Rule 23(b), F.R.Civ.P., which limits a minority stockholder's complaint to transactions occurring after he became a stockholder, they could only prosecute claims with respect to Goldfine's management of the building after August 1, 1949, and it devolved upon Brown, who represented stockholders whose ownership preceded 1946, but who only came into the case at the hearing on the first proposed settlement, to open up Goldfine's dealings with respect to the building from 1946 on. Whether to blame or not, however, the court may justifiably have felt that the Pomerantz group were entitled to compensation only on the basis of the benefits which would have accrued to Boston Port under the first settlement, some $262,000 less than accrued to it under the second.

Another possible explanation for an award of small fees in these cases would be that the court thought that counsel's work had been slipshod, careless, or inefficient, or that they had not driven a hard enough bargain for their client. This explanation, in so far as the Pomerantz group is concerned, must be rejected in the case at bar, however, for several times during the colloquy the court took occasion to commend the skill, industry, shrewdness and ability of Mr. Pomerantz, who, as we have pointed out, bore the brunt of the load for his group. In addition, the court in its supplemental

opinion (167 F.Supp. at page 928) said in partial support of its affirmance of the second proposed settlement that: "Here we have had the benefit of the most intensive investigation by one of the country's foremost specialists in this type of litigation."

The fact of the matter is that on the record before us we are unable to say with any assurance that the court fell into any of the errors alleged except the one with respect to *ante litem* benefits. Since this error infects the judgment below only insofar as the Pomerantz group is concerned, as the appellants Brown and Galdi cannot claim consideration of *ante litem* benefits for they did not come into the case until the hearing on the first stipulation for settlement, it follows that these latter appellants have failed to make out their case on appeal.

█ As to the amount of the award of counsel fees and expenses to the Pomerantz group there is not very much that we can do, for as we said in May v. Midwest Refining Co., 1 Cir., 1941, 121 F.2d 431, 440, "In making awards of this sort 'The court below should have considerable latitude of discretion on the subject, since it has far better means of knowing what is just and reasonable than an appellate court can have.' Trustees v. Greenough, 105 U.S. 527, 537, 26 L.Ed. 1157." Nevertheless, we are by no means powerless; indeed there is authority for the proposition that appellate courts have power to fix fees in these cases themselves. Pergament v. Kaiser-Frazer Corp., 6 Cir., 1955, 224 F.2d 80. We shall not undertake to exercise that power in this case. Although the fees set for the Pomerantz group seem rather surprisingly small in the light of the concession of counsel for the appellees as to fees and when compared with the fees awarded to the receiver and his counsel for only three days' work and no accomplishment, we think, in view of the inadequacy of the present record, and since the case must go back for consideration of the *ante litem* benefits as possible factor in awarding fees to that group, the better course for us is to leave the matter of the fees awarded to those appellants open for reconsideration by the court below in the light of this opinion.

Judgment will be entered in No. 5473 affirming so much of the order and substitute judgment of the District Court as awards compensation to the appellants. In No. 5472 judgment will be entered vacating so much of the order and substitute judgment of the District Court as awards compensation to the appellants and the case is remanded to that court for further proceedings consistent with this opinion.