In the Matter of POMERANTZ et al.

George B. HEDDENDORF
v.
Bernard GOLDFINE et al.
Civ. A. No. 56–356.

United States District Court
D. Massachusetts.

Dec. 30, 1959.

Supplemental Opinion Jan. 18, 1960.

---

A. L. Pomerantz, New York City, Jules B. Angoff, Boston, Mass., for plaintiff.

Lewis H. Weinstein, Boston, Mass., for defendants.

WYZANSKI, District Judge.

This case is before this Court on remand from the Court of Appeals for further proceedings consistent with its opinion of September 10, 1959. Angoff v. Goldfine, 1 Cir., 270 F.2d 185. The only pleading which is directly involved is the application for fee allowances and expenses by what Judge Woodbury has called the Pomerantz group, that is the law firm of Pomerantz, Levy, and Haudek, Messrs. Angoff and Davis, David Berdon & Co., and Fayette Associates, Inc. Available evidence includes the whole record in this Court in C.A. 56–356–W, Heddendorf v. Goldfine, the opinions of this Court reported under the title Heddendorf, for the Benefit of East

Boston Company v. Goldfine, D.C.D. Mass., 167 F.Supp. 915, and the stipulations and exhibits received December 28, 1959.

■ Pursuant to the mandate of the Court of Appeals, this Court will first "consider the Pomerantz group's contention that, prior to the commencement of the instant action * * * and during the pendency of the petition for a writ of mandamus in the Massachusetts Superior Court, the defendant, Goldfine, paid $180,000, in back interest on a mortgage held by Boston Port on the Little Building and caused the discharge of a $50,000 mortgage held by his wife on certain Boylston Street properties belonging to Boston Port, and that the Pomerantz group is entitled to have those benefits reflected in their compensation since the petition for mandamus was the efficient cause of the two transactions." 270 F.2d at page 191.

The facts with respect to the foregoing contention follow.

1. Fayette Associates, Inc. through its employee-stockholder, Heddendorf, began in 1951 to investigate the affairs of East Boston Company and Boston Port Development Co. In 1952 Heddendorf retained Angoff and Davis to assist him in securing access principally to the books of Boston Port. They initiated in the courts of the Commonwealth of Massachusetts mandamus proceedings on December 4, 1952. Ultimately, after having been amended, the petition for mandamus was dismissed on October 29, 1956.

2. The state court proceedings did not produce any direct recovery of funds or assets and did not produce any information that was of substantial benefit in the instant litigation.

3. It is true that during the pendency of the mandamus proceedings Goldfine caused Little Building Trust, Inc. to pay Boston Port $140,000 (not $180,000) in back interest on a mortgage held by Boston Port. The dates and amounts of payments, and the chronological relation of those payments to the financial needs of Boston Port and to the course of litigation in the mandamus proceedings are revealed in the five-column chart which forms part of Exhibit 3C. From the time correlations there shown, and from the general evidence which indicates that it was customary for those in charge of the so-called Goldfine corporations to transfer assets from one of those corporations to another, this Court finds that the petition for mandamus was not the efficient cause of the payment of $140,000 in back interest on a mortgage held by Boston Port.

4. It is also true that during the pendency of the mandamus proceedings Goldfine caused his wife not to discharge but to record the discharge of a $50,000 mortgage held by her on certain Boylston Street properties. The situation was that Mrs. Goldfine had given a discharge of the mortgage but no one had recorded it. After the mandamus proceedings began, but not in any way due to them, the SEC began an investigation of Boston Port and East Boston in connection with an alleged failure of those corporations to file certain statements called for by SEC regulations. To comply with the SEC demand for reports, the corporations employed Brown. Brown observed that there was no public recording of Mrs. Goldfine's discharge of the mortgage. Brown's observation directly led Goldfine to record the discharge of his wife's mortgage. Hence, as an ultimate fact, this Court finds that the petition for mandamus was not the efficient cause of the discharge of a $50,000 mortgage held by Mrs. Goldfine.

From the foregoing findings it follows as a conclusion of law that, in the words used at 270 F.2d 193, there were no "ante litem benefits" which may be legitimately taken into consideration as a "factor in awarding fees to" the Pomerantz group.

The next question to which this Court addresses itself is more subtle. When this case was last before this Court a year ago, it awarded to the Pomerantz group $45,000. The Court of Appeals on September 10, 1959 stated that "the fees set

for the Pomerantz group seem rather surprisingly small." 270 F.2d at page 193. In a restrained opinion by Judge Woodbury, that Court noted what factors ought "to be carefully considered and weighed in fixing the amounts of compensation to be awarded in cases of this sort" (270 F.2d at pages 188–190), and intimated that this Court's colloquies indicated that it had been less mindful of those factors than of certain factors which at the least were irrelevant. The Court of Appeals while it recognized that it had a revisory power "to fix fees" chose "not * * * to exercise that power in this case" but "to leave the matter of the fees awarded to" the Pomerantz group "open for reconsideration by the court below in the light of this opinion."

My duty is loyally to follow not merely the standards stated but the generosity implied by the Court of Appeals. It is incumbent upon me to wipe the slate clean of any bias or carelessness as well as any error that infected the earlier award. This is obviously a difficult psychological task. Yet the Court of Appeals has expressly decided that I am capable of reconsidering the matter. And, perhaps because they realize that at least I have a better awareness of the facts than any fresh judge would have, the parties prefer that I should not disqualify myself.

■ With respect to the Pomerantz group's application these seem to me the controlling facts.

1. The Pomerantz group was the efficient cause of Boston Port receiving the first settlement offer, which is described in detail both in the opinion of the Court of Appeals (270 F.2d at page 187) and in the opinion of this Court (167 F.Supp. at pages 919–920). So far as the evidence before me indicates, there was not much value in the equities on Boylston Street which were to be conveyed under that offer. But the proposed cash payments which were to be made were substantial, even when from the amounts promised some discount is taken on the grounds that not all of the sums are presently payable and that no one can be certain that Goldfine will be financially able to make the future payments promised. All in all, the present value of the first settlement offer was in the neighborhood of $400,000.

2. The Pomerantz group was not the efficient cause of Boston Port receiving the increase represented by the second settlement offer. Yet it is fair to recognize that the Pomerantz group did the important work of uncovering the basic facts and legal contentions which were used by the other parties. The increase involved in the second offer was, before appropriate discounts are taken because of the time factor and the uncertainty of full prompt payment by Goldfine, $262,500 (see 270 F.2d at page 188). The most important causes of the increase were two: the arguments advanced by lawyers who opposed the Pomerantz group's advocacy of the first settlement offer; and this Court's rejection of the Pomerantz group's proposed compromise with defendants.

3. In their investigatory and discovery work, in their written pleading, and in their oral advocacy the Pomerantz group rendered superior professional services (cf. 167 F.Supp. at pages 920, 928). The only question as to their professional performance which ever arose in this Court's mind concerned the ethics of their bargaining attitude in connection with the first settlement offer. The Pomerantz group represented both Heddendorf who became a stockholder in 1949 and (late in the proceedings) Janesco who became a stockholder in 1942 (167 F.Supp. 919). The Pomerantz group applied to this Court for permission for Janesco to intervene; but this Court denied the application as untimely. Then, instead of bringing a separate fresh suit on behalf of Janesco and others who became shareholders between 1942 and 1949, the Pomerantz group entered into a proposed compromise which was certainly in the interest of those who were post-1949 stockholders, but which appeared to sacrifice the interest of those who became stockholders between 1942

and 1949. See 167 F.Supp. 923. In 1958 my impression was that this was close to a breach of the Pomerantz group's fiduciary duties to all the stockholders it represented and my attitude did affect my award of fees. On re-examining this matter, it seems to me that the situation was tactically so difficult in the light of my refusal to allow Janesco to intervene that I ought to have attributed the action of the Pomerantz group to an honest exercise of disinterested judgment.

4. Applicants report that in this case they spent the following time: Mr. Pomerantz 51 days in Boston and other time in New York, Messrs. Angoff and Davis 2,000 hours, Messrs. Klinger and Kuller 965 hours, and Mr. Heddendorf 101½ days from 1952 to 1958 in addition to 45 to 60 prior to 1952. It is difficult for this Court to find that all this reported time was "fairly required to be spent on the case." What happened in this litigation is that more lawyers and accountants were involved and more travel time was expended than the case demanded. This Court believes that two able, experienced senior lawyers, two less-experienced junior lawyers, and one accountant each devoting one fifth of a year to this case could have produced the results here achieved. Were this group paid by a client on a time basis at the rate of $200,000 a year (this sum covering overhead expenses, clerical services, and other costs as well as professional services) they would not fall below the standard of this District. Hence on a strict time basis $40,000 would seem adequate. And if the amount be doubled on account of the contingent nature of the retainer $80,000 would seem adequate.

Were the Court to use instead of a reasonable time basis a percentage formula the result would not be very different. In the use of a percentage formula there are a number of difficulties. One is that this case was settled before trial. Another difficulty is that it might not be appropriate to allow the same percentage to be applied to say the last $100,000 as to the first $100,000 of the recovery. A

third difficulty is that while, as Judge Woodbury emphasized, 270 F.2d at page 189, there are "benefits accruing to the public from suits such as this", comparable benefits accrue to the public from anti-trust, wage and hour, and other quasi-public litigation in which low percentage figures have become customary in this district. Cf. Cape Cod Food Products Co. v. National Cranberry Ass'n, D.C.D.Mass., 119 F.Supp. 242. In a case not tried, in which public policy considerations are dominant, in which counsel are not voluntarily chosen by all those who participate in the recovery, but in which (because of the complexity of the issues, the difficulty of securing evidence, and the ability of opposing counsel) the result was doubtful, and the payment was contingent on the outcome, it would not seem unfair to allow 25% on the first $100,000, 20% on the second $100,000, 15% on the third $100,000, 10% on the fourth $100,000 and something more for the work done in digging up facts useful in securing the increase represented by the second settlement.

With the foregoing considerations in mind, with some awareness as to the prevailing rate of compensation in Massachusetts for those with the skill, experience, and standing of the applicants, with due regard for the difficulty encountered in unearthing the facts in this case, and the skill and resourcefulness of opposing counsel, and with an estimate of the intricacy, novelty, and complexity of the issues which this case presented, this Court awards the Pomerantz group as whole $80,000 in fees plus expenses of $8,000.

### Supplemental Opinion

This case is before me on remand from the Court of Appeals for further proceedings consistent with its opinion of September 10, 1959. Angoff v. Goldfine, 1 Cir., 270 F.2d 185. In my opinion of December 30, 1959 I awarded to the Pomerantz group $80,000 on account of fees and $8,000 on account of expenses. My award, while not reflecting any precise formula, was attributable to what I regarded as the intimations as well as

the directions of the Court of Appeals. In particular, I read significance into the Court of Appeals' reminders that my award was to be based "upon the full amount of the corporate recovery" not merely "on the amount of the benefits flowing to minority stockholders" (at pages 191–192) and upon "the contingency of compensation" (at page 191). In addition I tried to apply all the factors which were listed on page 189 of the opinion.

It is consistent with the opinions of the Court of Appeals and of this Court for me to recognize that of the $325,000 cash which defendant Goldfine is required to pay, pursuant to the judgment in this case, only $125,000 is due and has been paid, and that $75,000 will not be due until March 1, 1960, $75,000 will not be due until September 1, 1960, and $50,000 will not be due until March 1, 1961. These postponed payments as well as the payments already made by Goldfine are included in the achievement for which the Pomerantz group claimed and was allowed credit in the award. Therefore it appears only fair to make the award to the Pomerantz group payable with reference to whether and when Goldfine makes these future payments. Out of each payment made by Goldfine some portion should be used to pay the Pomerantz group. And it is only if Goldfine does pay in full that the Pomerantz group is entitled to be paid in full. Indeed there is ample evidence that the parties and the Court generally made proposals upon the assumption that counsel would "wait for * * * fees until * * * payments are made so as to make sure that we [counsel] don't charge a fee in advance of payment."

■ Confessedly, already there has been one departure from the assumption just recited. When this Court originally limited to $45,000 the award to the Pomerantz group, this Court approved an immediate payment of the whole of that $45,000 out of the first $125,000 received from Goldfine. But in giving its approval, the Court acted upon the agreement of all affected parties (some of whom were undoubtedly affected by the size of the award), and without expressing any approval of a principle that, where payments are to be made in installments, counsel are to be paid in full out of the first installment. Now that the method and time of paying counsel are in dispute, this Court ought to come closer to the sound principle that payment to counsel whose services are compensable upon a contingent basis shall proceed, if not in proportion to payments received by the client, at least with some relation to such payments.

■ The difficulty in applying this principle to the case at bar is the vague nature of this Court's opinion of December 30, 1959. It might have been better if I had sought to put a value upon each asset which the corporation acquired, to show the precise relation of the Pomerantz group to that asset, and to state how much of the award to the group was on account of the acquisition of that asset. But I did not proceed so minutely. After looking at all the factors, especially counsel's skill, the time they reasonably should have spent, and the contingent character of their compensation, I fixed $80,000 as the fee and $8,000 as the expenses. The total amount seems to me in compliance with the intimations of the Court of Appeals, and I believe I ought to adhere to it.

I believe no one has reasonable ground for complaint if I conclude that the $45,000 the Pomerantz group has already received should be regarded as a payment of all their expenses and of $37/80$ths of their fee. This $37/80$ths was not too small a proportion of the fee for immediate payment when it is recalled that, aside from other forms of recovery, only $125/325$ths of the cash due from Goldfine has as yet been paid.

It seems to me that on the $43/80$ths of the fee yet to be paid there is no formula which can be devised which will not have in it some arbitrary elements. The corporation proposes that out of the $75,000 due from Goldfine on March 1, 1960, the corporation shall pay $16,125, out of the $75,000 due from Goldfine on September

1, 1960 the corporation shall pay $16,125, and out of the $50,000 due March 1, 1961 the corporation shall pay $10,750. This means that the $43,000 balance required to complete the award to the Pomerantz group shall be paid in the same percentage amounts and at the same times as the corporation shall collect the $200,000 still owed to it by Goldfine. Thus on March 1, 1960 Goldfine is expected to pay the corporation 37½ per cent of the $200,000 he still owes. If, but only if, he makes such a payment, the corporation will then pay 37½ per cent of the $43,-000 balance which has been awarded to the Pomerantz group or $16,125.

Faced with the ambiguities of this Court's own award of $45,000 last year and of its opinion of December 30, 1959, the company has made what seems to me a workable proposal. At any rate it is more favorable to the Pomerantz group than the percentage formula which I discussed but did not adopt as an absolute measuring rod in my opinion of December 30, 1959. The Court will enter an order based on the corporation's proposal.