Gustave GERSTLE et al., Plaintiffs,

v.

GAMBLE–SKOGMO, INC., Defendant.

No. 64–C–1253.

United States District Court,
E. D. New York.

Sept. 24, 1971.

Emanuel Becker, New York City, for plaintiffs; Seymour S. Freeman, of counsel.

Lord, Bissell & Brook, Chicago, Ill., for defendant; Stephen A. Milwid, David M. Gooder, Steven C. Page, Chicago, Ill., of counsel.

Holtzman, Wise & Shepard co-attys., New York City, for defendant; James W. Deer, New York City, of counsel.

BARTELS, District Judge.

MEMORANDUM RE: HEARING HELD ON SEPTEMBER 14, 1971, REGARDING SPECIAL MAS-TER'S REPORT

On March 7, 1969, the court decided that Gamble-Skogmo, Inc. (Skogmo) was legally responsible to account and make restitution to the plaintiffs herein for damages suffered, arising out of a false and misleading proxy statement issued by Skogmo to secure the votes of the stockholders of General Outdoor Advertising Co., Inc. (General), in favor of a merger of General into Skogmo (298 F. Supp. 66 (E.D.N.Y.1969)). Pursuant to Rule 53, Fed.Rules Civ.Proc., 28 U.S.C.A., this court, on April 26, 1969, appointed Arthur H. Schwartz as Special Master to hear and report upon the accounting and the amount of restitution to be paid by Skogmo to the plaintiffs and those similarly situated. After many hearings at which testimony and evidence were taken concerning the sales by Skogmo of General's outdoor advertising plants in the United States, the value of the unlisted capital stock of Claude Neon Advertising Ltd. (Claude Neon), a Canadian corporation, approximately 96% of which was held by General, the value of the unlisted capital stock of Stedman Bros. Ltd. (Stedman), a Canadian corporation, 98% of which was held by General, and certain other items involving withdrawal of funds, expenses, income and taxes, the Special Master filed his report with the court. Both parties have filed numerous objections thereto and by briefs have raised substantial issues concerning the formula of valuation and in particular the valuation of Claude Neon and Stedman. After considering the full and complete report of the Special Master, consisting of 119 printed pages, in the light of all the objections raised to the ultimate result, the court has concluded that the formula of valuation and damages, as suggested in the terms of its original decree is, under the particular facts and circumstances of this case, impractical and speculative. Accordingly, the court, on its own motion, has adopted a new formula which it believes will more nearly provide a fair and adequate method of determining the amount of damages and restitution due to the plaintiffs and which will be hereafter explained.

Before doing so, it is appropriate that the court refer to two objections raised

by the defendant, asserting that the original decree was defective in that it required a valuation (1) at the highest value of General's assets between the date of merger and the date of the final decree, and (2) of each and all of the assets of General at such highest value. Had it been possible to effectuate, with any degree of certainty or preciseness, the formula in the original decree, these objections would have been ignored under the well-known principle that the defendant by its conduct was estopped from raising such objections at this late hour. *Cf.* Moore v. United States, 217 F.Supp. 289, 304 (E.D.Pa.1963), affirmed, 332 F.2d 372 (3d Cir. 1964); Moore's Federal Practice ¶ 0.405(8); Restatement of the Law of Judgment § 1. In fact, as we shall see, the court was led to believe by counsel for both sides that there was no objection to the prescribed formula.

Plaintiffs submitted a proposed decree, to which the defendant made certain objections but did not object to that portion providing that the restitution of the assets to which the plaintiffs were entitled should be "the highest value between the date of the merger and the date of restitution." However, in its objections to plaintiffs' proposed form of decree, the defendant did state that restitution should be limited "to the highest value of such assets between the date of the October 17, 1963 merger and the date such assets were disposed of by Gamble-Skogmo, Inc., or the date when the final decree is entered herein by the Court after it approves the Master's report, whichever is earlier." Thus, in effect, both parties adopted the formula of valuing the unsold assets at their highest intermediate value between the date of the merger and the date of the final decree. Accordingly, the court signed a decree which provided that Skogmo should account or make restitution "of the value of each and all of the assets of General at the highest value of such assets between October 17, 1963, the date of the merger, and the date when the final decree is entered herein

approving the Master's Report." Since all of General's outdoor advertising plants (United States assets) were sold shortly after the merger, no question is presented with respect to these properties.

After the Special Master had proceeded with his hearing for almost a year, the defendant belatedly took exceptions to that part of the decree which fixed the value of the assets at their highest value between the date of the merger and the date of approval of the Master's report, stating that the plaintiffs were entitled to accretions in the value of assets only for "a reasonable time" after the plaintiffs discovered the fraud. The Special Master decided to proceed under the form of the existing decree and to delay the presentation of arguments with respect thereto until the Master's report was before the court for final disposition. The validity of this objection will be best considered after discussion of defendant's second objection.

The second objection refers to another provision in the plaintiffs' proposed decree, which the defendant accepted without objection and which appeared in the final decree signed by the court. This provision provided that Skogmo should account and make restitution for the value "of each and all of the assets of General at the highest value of such assets." Only after the Special Master had proceeded to find the highest value of each of the assets, taken separately, and made his report, did the defendant object to the report on the ground that at most, it was liable to account for the combined highest value of all the assets rather than the highest value of each asset. For the following reasons, the court believes that this objection is well, although belatedly, taken:

■ Plaintiffs were deprived of the value of their General stock by defendant's fraud in inducing them to surrender the same under the terms of the merger agreement. The problem raised is what was the value of plaintiffs' stock of General. The court believes the value was that proportion of the collective value

of General's assets which the amount of plaintiffs' stock bore to the number of outstanding shares of all of General's stock. This value, of course, includes the stock of Stedman and Claude Neon. In determining this value the plaintiffs, at best, are entitled to no more than their proportionate share of the highest value which the collection of all these assets reached at any one point in time during the period. Under the decree, the Master found that Claude Neon and Stedman had reached their highest value at different dates. The only theory which could justify this valuation is that, absent any fraud on the part of the defendant, General would have sold Claude Neon in the beginning of 1970, the date of its highest value, and Stedman in the fall of 1968, the date of its highest value. The court finds this assumption too untenable and speculative to support an award of damages.

To award the plaintiffs restitution with respect to Stedman and Claude Neon under such a theory would confer upon the plaintiffs an unwarranted benefit at the expense of the defendant. This is true because the highest value of the two different units, which occurred on different dates, might be far above the combined highest value of both units as determined on one specified date. However, to adopt the more theoretically acceptable approach of valuing the assets at their combined highest value on any particular date until the date of the final judgment would create almost insuperable practical problems when dealing with two different companies, in view of the numerous possible permutations and combinations of values.

Moreover, the task of reconstructing the combined highest value of the assets of the two companies is exacerbated by the fact that after the merger neither Stedman nor Claude Neon was permitted by Skogmo to conduct its business as an independent entity but, instead, each was operated as a coordinated cog in the overall Skogmo corporate machine. Of this the court was not aware at the time it entered the original decree. As appears from the Master's report, each company, and particularly Stedman, was subjected to numerous intercorporate charges, financial adjustments and substantial payouts. To arrive at a true valuation of the companies, the Master was compelled to attempt to unscramble some of the intermingling of the assets of these companies with other companies owned by Skogmo and in some cases to reverse certain transactions. Thus, the Master was constrained to undertake a hypothetical reconstruction of the natural financial development of each company, which consequently produced the basis for objections from both parties. Therefore, it became obvious from the report that a fair valuation of each of these companies, under the prescribed formula, was of necessity highly speculative and could hardly be a reliable indicator of the damage actually sustained by the plaintiffs. It should be emphasized, however, that the fact that the application of the original formula was made more difficult by the intermingling of assets by the defendant has no bearing upon the court's present decision to modify the formula since any such difficulties and uncertainties arising from this fact of necessity would have been resolved against the defendant. See Marcus v. Otis, 168 F.2d 649, 657 (2d Cir. 1948). Only because such a valuation of these two companies is impracticable for other reasons and, in addition, has no direct relation to the fraud involved, has the original approach been abandoned.

■ Returning to the defendant's objection that General's assets were valued at their highest value at a period exceeding "a reasonable time," after the merger, the court notes that this objection is predicated upon defendant's interpretation of Section 151(c) of the Restatement of the Law of Restitution. The test, as set forth in this section, refers to circumstances where a seller has been tortiously deprived of an asset of a *fluctuating* value and might have secured a higher amount for it had he not been deprived of the same. To place him in the position he would have been had it

not been for the wrongful conduct of the defendant, he is allowed the highest value reached by the subject matter within a reasonable time after the tortious conduct if the seller can prove that he probably would have made a sale of the asset at its highest point in value. With respect to the outdoor advertising plants of General, a sale was actually consummated, and regarding this asset the court did adopt the restatement formula as applied in Speed v. Transamerica Corporation, 135 F.Supp. 176 (D.Del.1955), modified on other grounds, 235 F.2d 369 (3d Cir. 1956), and accordingly will order the defendant to disgorge the profits made in liquidating these advertising plants. These profits were directly related to the fraud perpetrated upon the plaintiffs.

■ Concerning the Stedman and Claude Neon stock, an entirely different problem is presented. There was no finding of any misrepresentation or omission in the proxy statement with reference to these two companies. There was no misstatement in the proxy statement which related to the potential growth of General, Stedman or Claude Neon. The misrepresentation related only to the static element of the liquidating values of the United States properties. While the plaintiffs were placed in the position of forced sellers of their General stock by reason of the fraud, the wrong did not relate to Stedman or Claude Neon values. Under the circumstances of this case, in determining the measure of damages as distinguished from a finding of liability, the fraud can be limited to the particular assets involved, i. e., the United States outdoor advertising plants, as opposed to the totally independent assets of Stedman and Claude Neon. In other words, a nexus between the fraud of the defendant and possible changing values of Stedman or Claude Neon has not been shown. But, assuming that plaintiffs were entitled to the increased valuation in Stedman and Claude Neon, if any, arising within a reasonable time after the merger due to the fraud relating to the United States outdoor advertising plants, there has been no showing that a profit was realized by the sale of Stedman or Claude Neon after the merger (see Janigan v. Taylor, 344 F.2d 781 (1st Cir.), cert. denied, 382 U.S. 879, 86 S.Ct. 163, 15 L.Ed.2d 120 (1965)), nor that the plaintiffs, by the act of the defendant, were deprived of an opportunity to gamble on *fluctuating* future prices of Stedman and Claude Neon and that defendant was able to do so and retain the proceeds and profits of such a gamble. Speed v. Transamerica, *supra*.

In view of the above considerations, the court concludes that the proper formula for determining damages and the amount of restitution in this case should be recovery by the plaintiffs upon the basis of their proportionate share of (1) any and all profits received by the defendant in liquidating the United States outdoor advertising plants of General; (2) the value of Stedman and Claude Neon on the merger date; and (3) compensatory interest on the proceeds received from the sale of the outdoor advertising plants and also upon the value of Stedman and Claude Neon from the date of the merger.

■■ The question of fixing a fair rate of pre-judgment interest is not an easy one. The defendant has had the benefit of the monies received from the sale of the outdoor advertising plants and the use of the values of the Stedman and Claude Neon companies from the date of the merger. Defendant should not be permitted to have the use of such assets together with the income therefrom without paying compensatory interest from the date it received the assets. The court is aware of the fact that the rate of such interest must be predicated upon the principal of compensation for the loss sustained by the plaintiffs and at the same time must be based upon fundamental considerations of fairness, tempered by assessment of the equities (Norte & Co. v. Huffines, 416 F.2d 1189 (2d Cir. 1969), cert. denied sub nom., Muscat v. Norte & Co., 397 U.S. 989, 90 S.Ct. 1121, 25 L.Ed.2d 396 (1970)). There are a number of guidelines which

could be adopted as appears from the Master's report, but the court, after due deliberation, believes that under the facts of this case the rate set by the New York State Banking Board for the periods involved would be a fair compensatory rate calculated to make the plaintiffs whole. Under this new formula the plaintiffs will receive no less than they are entitled to receive, and as far as Stedman and Claude Neon are concerned, no less than they had agreed to accept under the merger agreement. Such a measure of damages the court believes will be in compliance with the Supreme Court's directive that damages should be recovered to the extent shown. See Mills v. Electric Auto-Lite Co., 396 U.S. 375, 389, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970).

It does not follow from the modification of the original decree that the excellent work performed by the Special Master has been in vain. Indeed, it was due to his thorough and extensive findings upon valuation of Stedman and Claude Neon that this court was able to realize the necessity for revision of the original decree. Moreover, much of the work he has done will be very useful in reaching a proper result under the new formula. Accordingly, the court wishes to express its appreciation for the Special Master's careful and sound appraisal of the evidence and the expert testimony adduced at the hearings and his full, detailed and enlightening report.

Since this matter must again be returned to the Special Master for a final report in accordance with this opinion, it is obvious that plaintiffs' recovery has again been delayed. The court is deeply concerned by this postponement, which has been partly due to the failure of both parties to make reasonable concessions with respect to evidentiary matters before the Special Master. The record is replete with examples of exhibits which were originally introduced and then had to be modified, changed or revised, separate and apart from the need for bringing exhibits up-to-date, making the task of the Master as well as the court a difficult one. Both counsel are experienced attorneys and the court enjoins them to cooperate to the end that there be a termination of this litigation at the earliest possible moment. A major portion of the delay can also be charged to the failure of the defendant to raise the objections to the decree which it now interposes. All these matters will later be given adequate consideration and will be reflected in the ultimate allocation of allowances and costs.

Pursuant to the foregoing, the Special Master's report will not be accepted in its present form and the court will enter a new form of decree modifying the earlier decree and requiring, in essence, a modified accounting upon which restitution shall be based and providing for the continuance of Arthur H. Schwartz as Special Master pursuant to Rule 53 of the Federal Rules of Civil Procedure, 28 U.S.C.A., to hear and report upon the accounting and amount of restitution to be paid by Skogmo to the plaintiffs and those similarly situated upon the following conditions:

(a) Skogmo shall account for and make restitution for all the assets of General including the value of the shares of stock of Stedman, Claude Neon, and Williams-Thomas, Ltd. as of the date of the merger, provided, however, that where assets were disposed of by Skogmo after the merger and before the final decree entered herein, then the value of such assets shall be the net proceeds received by Skogmo therefor as of the date of the disposition of said properties.

(b) Skogmo shall pay interest upon the value of said shares of stock of Stedman, Claude Neon, and Williams-Thomas, Ltd. from the date of the merger, at the value determined as of said date up to and including the entry of the final decree approving the Master's report, at the rate of interest set by the New York State Banking Board for the periods involved.

(c) Skogmo shall pay interest upon the net proceeds received from the disposition of said post-merger sales (without any deduction for dividends) at the rate

of interest set by the New York State Banking Board for the periods involved, until and including the entry of the final decree approving the Master's report.

(d) In determining the amount of restitution for the properties sold, Skogmo shall be credited with (i) the Federal and State capital gains taxes incurred on post-merger sale of General's properties; (ii) Federal income and State income, sales and franchise taxes required to be paid in connection with and *specifically arising from the post-merger sales of said General's assets*; (iii) post-merger cash losses, net of tax credit, arising from the operations of the properties subject to said post-merger sales, not in excess of $634,719 as set forth in defendant's Exhibit M–228 (revised); (iv) improvements upon the properties in question which do not fall within the category of maintenance and repairs in order to continue the operation of the properties, but which improvements were necessary to effectuate the sales of said properties, to the extent that such improvements added to the sales value, but not otherwise; and (v) a reserve in the nature of a reserve for bad debts, for the unpaid portion of the purchase notes acquired by General as of the date of the final decree to be entered by the court herein, if the experience of the collectibility of the purchase notes as of that date justifies such a reserve.

(e) In determining the amount due plaintiffs, Skogmo shall receive a credit for (i) the $2,755,957 capital loss sustained on the repurchase and sale of the Channing stock in connection with the Carlson "Put" agreement; (ii) the market value, as of the time of the October 17, 1963 merger, of the shares of Skogmo preferred stock issued to General stockholders who deposited their shares of stock of General and the shares of such Skogmo stock available for issuance to those stockholders who have not exchanged their shares; (iii) all dividends paid by Skogmo on such shares of Skogmo preferred stock, plus accumulated unpaid dividends on such Skogmo stock available for issuance to non-exchanging

General stockholders, provided such shares are delivered and such dividends are paid to such nonexchanging stockholders; (iv) interest on the dividends actually paid by Skogmo to General's stockholders on Skogmo preferred stock but not interest on unpaid dividends; and (v) the proportionate amount of Skogmo's stock interest in General at the time of the merger and of any other stockholder not entitled to restitution as herein set forth.

(f) Skogmo shall not be entitled to any credit for obtaining or effectuating on behalf of General the sale of purchase notes to the First National Bank of Chicago syndicate.

(g) General stockholders who have not exchanged their shares of stock for shares of Skogmo preferred stock shall receive such shares of preferred stock and accrued and unpaid dividends thereon upon exchange of their shares of General stock.

(h) The burden of establishing a bar to the relief herein provided shall not rest on the defendant with respect to those General stockholders whose association with the management of the defendant or of General was such that they were in a position to be charged with notice or knowledge of the intent to sell or breach of fiduciary obligation.

(i) As to any matters involved in this modified accounting with respect to which the Special Master has heretofore taken evidence and made findings, such findings shall be used as the basis for the new accounting without the admission of any further evidence except insofar as the Special Master may deem the same necessary or advisable.

(j) In all other respects the proposed decree set forth in the opinion of this court (298 F.Supp. 66) will be followed and if it so happens that by reason of any presently unforeseeable circumstances the Master or the parties cannot ascertain from the phraseology of the decree the nature and extent of the Master's jurisdiction or the rights of the parties or the issues to be considered by

the Master, then the Master or either party, as the case may be, may apply to the court for further instructions.

If neither party submits a form of decree in accordance with the foregoing by October 8, 1971, specifying that hearings before the Special Master shall be completed not later than December 15, 1971, the court will do so on its own accord.

· Submit order.