Gustave **GERSTLE** et al., Plaintiffs,

v.

**GAMBLE–SKOGMO, INC.,** Defendant.

No. 64–C–1253.

United States District Court,
E. D. New York.

Aug. 22, 1972.

Emanuel Becker, Becker & Schreiber, New York City, for plaintiffs; Saul S. Freeman, New York City, of counsel.

Lord, Bissell & Brook, Chicago, Ill. (Stephen A. Milwid, David M. Gooder, Steven C. Page, Hugh C. Griffin, Chicago, Ill., of counsel), Holtzmann, Wise & Shepard, New York City (James W. Deer, New York City, of counsel), for defendant.

BARTELS, District Judge.

This is the second time the court has been required to review the report of the Honorable Arthur H. Schwartz, the Special Master, reappointed on October 12, 1971 (1971 Decree) to hear and report and account for the amount of restitution to be paid by Skogmo to the plaintiffs and those similarly situated. The first report was filed pursuant to an order dated April 26, 1969 (1969 Decree) appointing the Honorable Arthur H. Schwartz Special Master. In this connection reference is made to the opinion of this court, dated March 7, 1969, 298 F.Supp. 66 (E.D.N.Y.1969), holding Skogmo legally responsible to account and make restitution to the plaintiffs; to the 1969 Decree; to the opinion of this court, dated September 24, 1971, 332 F.Supp. 644 (E.D.N.Y. 1971), concerning the hearings relative to the Master's first report, and also to the 1971 Decree.

Under the 1969 Decree an accounting procedure was prescribed, to which, after hearings before the Master and the filing of the Master's report, both parties belatedly filed objections. In addition, both parties filed briefs and reply briefs in support of their objections, with respect to which the court held a hearing on September 14, 1971. Predicated upon the difficulties of valuation of both Stedman and Claude Neon under the theory of the 1969 Decree, the court concluded that a more equitable accounting formula should be adopted, as more fully set forth in its 1971 Decree. Pursuant thereto, new hearings were held and the present report was filed by the Special Master on January 31, 1972, and

again was followed by innumerable objections, briefs and reply briefs by both parties. As noted in the September 24, 1971 opinion, the court was deeply concerned by the delay in plaintiffs' recovery, noting that the record was replete with examples of exhibits which were originally introduced and then had to be modified, changed or revised and brought up-to-date. Again the court notes from the objections of both parties that there have been very few concessions and constant changes in the figures, calculations and theories advanced by the defendant and to a certain degree by the plaintiffs, which in turn caused the Master and court to review a number of the issues two and in some cases three times.

The parties wrangled every inch of the way, which in turn caused considerable delay. Throughout the hearings before the Master, and to some extent at the hearings confirming the Master's report, a certain amount of confusion resulted from the habit indulged in by the defendant of producing exhibits and recalling them to make additions and corrections. One clear example of the repeated modification and revision of exhibits is the defendant's Exhibit M–228 submitted for the purpose of documenting the defendant's claimed post-merger cash losses. During the 1967–1970 hearings as well as during the 1971 hearings, said Exhibit was subject to constant changes, each time on the ground that an error had been discovered. Eventually Exhibit M–228 as revised gave way to a new Exhibit, M–304. This in turn was subsequently modified as M–304–A. Despite the many revisions in the post-merger cash loss exhibit over an extended period, defendant, before the Special Master at the close of the 1971 hearings, argued that there was a newly found error, relating back to M–228, of some $163,420.

Numerous other examples of changed exhibits (including the underlying accounting, M–1, subsequently changed to M–1–A) could be provided. However, suffice it to say that the parties, and in

particular the defendant, have not made the task of the Special Master, or of this court, any easier by urging repeated revisions even up to the last moments of this proceeding. The defendant had the burden of presenting the accounting material, since the records were wholly within its control, and the Master was extremely patient and tolerant in permitting the corrected exhibits. It was a most difficult task for the Master, and his report demonstrates his competence.

If the court were to comment upon every objection of both the parties to the present report, many pages of unnecessary explanation would be required. However, there are certain items which the court believes should be modified and others which require some comment as will appear below. Except for those items changed in the following discussion, the court adopts the Master's report and hereby rejects all other objections by the parties.

### Pre-judgment interest

The most serious objection to the Master's report is made by the defendant and stems from that portion of the 1971 Decree which reads as follows:

(b) That Skogmo shall account for and make restitution for all the assets of General including the value of the shares of stock of Stedman, Claude Neon, and Williams-Thomas, Ltd. as of the date of the merger, provided, however, that where assets were disposed of by Skogmo after the merger and before the final decree is entered herein, then the value of such assets shall be the net proceeds received by Skogmo therefor as of the date of the disposition of said properties;

(c) that Skogmo shall pay interest upon the value of said shares of stock of Stedman, Claude Neon, and Williams-Thomas, Ltd. from the date of the merger, at the value determined as of said date up to and including the entry of the final decree approving the Master's report, at the rate of interest set by the New York State

Banking Board for the periods involved;

(d) that Skogmo shall pay interest upon the net proceeds received from the disposition of said post-merger sales (without any deduction for dividends) at the rate of interest set by the New York State Banking Board for the periods involved, up to and including the entry of the final decree approving the Master's report;

\*      \*      \*      \*      \*      \*

(f) that in determining the amount due plaintiffs, Skogmo shall receive a credit for \* \* \* (ii) the market value, as of the time of the October 17, 1963 merger, of the shares of Skogmo preferred stock issued to General stockholders who deposited their shares of stock of General and the shares of such Skogmo stock available for issuance to those stockholders who have not exchanged their shares; (iii) all dividends paid by Skogmo on such shares of Skogmo preferred stock, plus accumulated unpaid dividends on such Skogmo stock available for issuance to non-exchanging General stockholders, provided such shares are delivered and such dividends are paid to such non-exchanging stockholders; (iv) interest on the dividends actually paid by Skogmo to General's stockholders on Skogmo preferred stock at the rate of 5% per annum, but not interest on unpaid dividends;

Following the directions in the decree, the Master fixed the value of the assets of General set forth in paragraph (b) and then computed interest thereon in accordance with paragraphs (c) and (d), arriving at a total of $44,212,215 [Master's second report, chart 3, p. 60]. In order to grant Skogmo the credit to which it was entitled in paragraph (f) of the Decree, the Master then deducted from the above total of $44,212,215 the items set forth in the aforesaid subdivisions (ii), (iii), and (iv) of paragraph (f) of the Decree, aggregating $32,149,799, arriving at a total of $12,062,416 owing to the plaintiffs.

Defendant has two objections to this accounting procedure: the first being directed against the time when the Master made his deductions, claiming that defendant was entitled to credit for the items set forth above in subdivision (ii) of paragraph (f) *before* the Master computed the interest on the values and proceeds due from the defendant in accordance with paragraphs (c) and (d) of the 1971 Decree; and the second being directed against the New York State Banking Board rate of pre-judgment interest averaging 7% charged against the defendant as compared to the rate of pre-judgment interest of 5% charged against the plaintiffs. As to the first objection, defendant claims that the interest upon any sums due the plaintiffs should not be computed upon the gross amounts due the plaintiffs but upon the net amounts after the defendant has been given credit for the value of the Skogmo preferred stock received by the plaintiffs in accordance with the Decree.

■ The defendant objects to the fact that it was not given credit for the $22,113,272 in preferred stock on October 17, 1963 before the Master computed interest on the gross amounts due the plaintiffs, and thus charges defendant with interest as if nothing had been paid until December 31, 1971. The problem does not arise in the ordinary case where there is no differential in the interest rate to be computed upon the amount to be accounted for by the defendant and the amount for which the defendant is to be credited. Under those circumstances, it makes no difference when the defendant's credit is deducted. Defendant cites many cases, including Norte & Co. v. Huffiness, 288 F.Supp. 855 (S.D.N.Y.1968), aff'd. 416 F.2d 1189 (2 Cir. 1969), which it argues require the court to compute interest according to the formula it suggests, but in these cases there was no differential

in the interest rates involved, and consequently they are not applicable to the facts in the present case. The problem arises only when there is a differential between the interest rate to be applied to the plaintiffs' recovery and the interest rate to be applied to the defendant's credit—and that is this case. What defendant now seeks is to emasculate the effect of the 7% interest rate by requiring the Master to first deduct the value of the preferred stock delivered before computing interest on the net recovery for the period involved. In order to properly compensate the plaintiffs for the injuries they sustained, the defendant's credit should not be deducted until after the amount of the plaintiffs' recovery has been computed.

■ Referring to the second objection, the New York State Banking Board rate of 7% was fixed in measuring plaintiffs' recovery against defendant because plaintiffs were the victims of a fraudulently coerced sale and were deprived of their option of retaining shares of stock in General and speculating upon its success, and because the defendant had the benefit and use of the properties and funds it obtained from this coerced sale during the period involved.

It does not follow that defendant was entitled to receive credit on its payments at the same interest rate. The defendant was entitled to a credit of the actual dividends it paid or made available for payment, plus interest at a rate of not more than the rate which the average stockholder could be expected to obtain on his savings if placed with an insured savings bank during the period since the merger. This rate was fixed at 5%.[1] The Master has properly given the defendant due credit for the property delivered to plaintiffs, and his computation is accepted.

---

1. In fact, the Master found in his first report (p. 98) that the defendant agreed that the interest rate on dividends paid to which it was entitled to credit should be 5%.

### Stedman Valuation

Both parties objected to the valuation fixed for Stedman by the Master as of the date of the merger, October 17, 1963. The Master's report adequately shows the method employed in reaching the valuation of $24,250,000 (U.S.). In reaching this conclusion, the Master gave appropriate weight to the $20 per share figure paid by Mr. Gamble in December, 1962, which yielded a purchase price of $22,460,000. As noted by the Master, the earnings of Stedman not only increased in 1962 but also improved in 1963.

After reviewing the entire Stedman picture as developed from the testimony and documents presented at both hearings, the Master concluded that the value of Stedman stock as of October 17, 1963 was $24,250,000 (U.S.), which represents an earnings multiple of approximately 14.7 as applied against earnings for 1962 and 1963. The court accepts the Master's valuation of Stedman and finds the objections of both the plaintiffs and the defendant thereto without merit.

### Claude Neon

Both parties object to the valuation of Claude Neon. The Special Master in arriving at his valuation of $13,250,000 (U.S.) for Claude Neon properly relied on the experts presented by both parties during the 1969–70 hearings as well as the extensive documentation available to the Master during both sets of hearings.

As noted by the Master, in the 1972 Report (pp. 34–35), there is a dearth of comparable outdoor advertising companies to which the Claude Neon enterprise can be effectively compared. Therefore, the Master was unable to simply apply a price earnings multiple against the Claude Neon income figures and evolve a proper valuation on this mathematical basis.

Defendant claims that the Special Master reached the Claude Neon valuation as follows:

| | | |
|---|---|---|
| 1. | 12 times 4 year average earnings: | |
| | 12 x $1,000,000 (C) = | $12,000,000 (C) |
| 2. | Excess cash available before 1964 dividend Amount of 1964 dividend less money borrowed | |
| | $4,500,000 (C) — | |
| | $3,500,000 (C) = | 1,000,000 (C) |
| 3. | "Value of real estate not specifically required for the advertising business:" minimum $900,000 (C) to maximum $1,290,000 (C) — | |
| | rounded | 1,300,000 (C) max. |
| | | $14,300,000 (C) |

Defendant asserts this is error because by applying this formula the capital gains on the sales of the real estate are counted twice; once by including the same in the earnings figure as capital gains on real estate sales listed above under (1) and again by including the same in the value of the real estate figure listed above under (3). This is an assumption which is not borne out by the record. What the Master did was to compare and evaluate the various expert appraisers' reports and in addition merely indicate that if one took a 12 times earnings ratio against a $1,000,000 income figure, a total of $12,000,000 would result. But this approach was not the sole basis of the Master's appraisal (see pp. 33–34).

Specifically, the Master carefully weighed the numerous exhibits submitted by both parties. Among the documents submitted to the Master, and considered by him, were memorandums by Roy Gesme, an officer of Skogmo (P–107 and P–310). In the first memorandum, P–107, Gesme placed a conservative valuation of $12,000,000 on Claude Neon while noting that a liberal valuation would yield $15,000,000. In P–310, Gesme reaches a valuation of $15,000,000. Other exhibits considered by the Master yielded valuations ranging from $16,000,000 to as low as approximately $8,000,000.

After considering the numerous exhibits submitted, as well as studying the Claude Neon situation as developed in both sets of hearings, the Master arrived at his valuation of $13,325,000. As is evident from the 1972 Report (pp. 17 through 35), the Master's valuation was not reached by strict adherence to any of the "formulas" (e. g., Baker and Gould or Mills and Rockleys Ltd.) submitted by the parties, but rather by sifting through the abundance of testimony and exhibits and giving appropriate consideration to the entire Claude Neon situation. Under the circumstances the valuation reached by the Master is fair and supported by the evidence. It is accordingly adopted by the court.

### Williams-Thomas, Ltd.

Defendant claims that the value of the above company fixed by the Master at $370,000 (U.S.) should be reduced by $30,000 (C) [$27,750 (U.S.)] because of contingent tax liabilities and "some small current liabilities" not explained by defendant. The Master refused to accept the adjustment. This can be easily understood because the evidence adduced by the defendant before the Master was confusing and unpersuasive. The court accepts the Master's finding.

### The Accounting

Again both parties have submitted in a dreary and tiresome manner a repetition of a number of objections to the accounting procedures of the Master, only a few of which the court believes deserve any consideration. They are as follows:

(a) The 1% Cash Collateral Account

■ General sold to the First National Bank of Chicago Syndicate $27,891,299 of 8-year purchasers' notes given by purchasers of the properties and guaranteed by General. While General received cash of the face amount of the notes, General nevertheless remained contingently liable and was required to maintain with the bank as cash collateral security ⅙ of all interest paid by the purchasers on the face value of the notes, which now amounts to $1,300,000. Plaintiffs claim that they are entitled to this sum as of the date of the merger discounted at the rate of 4½% for the period involved, amounting to $416,173, plus interest on the latter sum to the date of the accounting. The Master found that under the banking agreement Skogmo, as General's successor, could not utilize the amount on deposit, and in addition was not paid interest thereon by the syndicate; that accordingly plaintiffs were not entitled to such amount as an asset as of the date of the merger. Defendant did credit the plaintiffs with their share of the cash collateral account when it was released to them. Therefore the Master disallowed plaintiffs' claim and the court adopts the Master's finding.

Again plaintiffs claim that the cash collateral security received by Skogmo as interest on the notes should not be offset against the losses in arriving at the net post-merger loss figure. Defendant does not dispute this but contends that the ceiling on post-merger cash losses was fixed by the court at $634,719, as contained in M–228 (revised), with the cash collateral security included as an income item, and that to exclude it now without increasing the ceiling would be unfair. The Master agreed with the defendant's conclusion, and the court agrees with the Master's conclusion.

(b) Capital Improvements in the amount of $241,000.

The Master has given defendant credit for the above amount as capital improvements necessary to effectuate the sales of General's plants, as reflected in M–305 and M–306. This was in accordance with paragraph (e)(iv) of the 1971 decree. Plaintiffs urge that there was no evidence to support a finding that such improvements were necessary to effectuate the sales. The Master ruled that there was, and the court reaffirms his ruling.

### (c) *Post-Merger Cash losses*

In its opinion dated March 7, 1969 (D.C., 298 F.Supp. 66), the court, in passing upon the fairness of the plan of merger, stated that since General's advertising plants were appraised upon their liquidating value rather than upon their operational value, the amount of losses incurred in continuing the operation of such plants until sales were effectuated was a necessary expense. Consequently, in the 1971 Decree the court allowed Skogmo a credit for post-merger cash losses on United States operations, net of tax credit. After evidence was introduced before the Master and his first report filed on December 24, 1970, the court, relying upon defendant's own Exhibit M–228 (revised), with respect to post-merger cash losses, allowed the defendant a credit not in excess of $634,719. At the second hearing before the Master, additional evidence was adduced concerning other income and post-merger cash losses which, as appears below, suggests an upward revision of the $634,719 figure.

Defendant attacks its own ceiling of post-merger cash losses of $634,719, claiming that it ought to be increased by $163,420 due to an original error in its Exhibit M–228 and by another $163,420 due to a second error of the same amount made by Skogmo. This type of change is illustrative of the difficulty which has confronted both the court and the Master throughout the accounting proceeding. As to the first error Skogmo offered no proof or explanation and this court will ignore its claim in that connection. According to the Master, the second error occurred when Skogmo included this amount in the cost figure of the plants sold, which Skogmo added to the basis of the plants and which was reflected in the "Gain on disposition of property and equipment" figure. Actually the Master found that this sum did not represent actual improvements of the plants sold and should be treated as an expense. This resulted in an increase in the figure for gain on disposition of property and equipment,

and in fairness required an increase in the allowable post-merger cash losses figure. The court upholds the Master's recommendation and increases the amount of the post-merger cash losses by $163,420.

In addition to the above amount, the post-merger cash losses ceiling should also be raised by $48,317, representing an increase in cash value of life insurance. As agreed to by both parties, this figure was originally treated as income of General following the merger. The Master in his present report (p. 43) found that actually this figure, as contended by the plaintiffs, represented a realization of an asset, and not income, which existed on October 17, 1963. Therefore, since this sum had already been included by the defendant as income for purposes of the post-merger cash losses and is now being included again, the defendant's credit for post-merger cash losses should be increased by $48,317.

### (d) *Tax Credits*

Defendant claims that it is entitled to a credit of $52,792 for New York City Sales Taxes which it was required to pay in connection with the sale of the plants. Because the 1971 Decree mentioned only State and Federal taxes, the Master felt that he could not allow this credit but the court, realizing that this was an unintentional omission, does hereby allow this credit subject to deduction in the amount of any Federal tax credit resulting therefrom.

Plaintiffs claim that defendant's credit for capital gains taxes on the sale of the United States branches of General for the year 1964 should be reduced by $359,570 to reflect the so-called "foreign tax credit." Defendant introduced evidence to indicate that the alleged foreign tax credit was designed to avoid any duplicate taxes and that accordingly this foreign tax credit would not be available to reduce the taxes paid on United States income. The Master found, and the court agrees that there was no

reduction of United States taxes on United States income arising out of any foreign tax credit and accordingly the court overrules plaintiffs' contention. (See 1970 Master's Report, p. 92.)

(e) *Value of Skogmo Preferred Stock*

 Plaintiffs object that the value of $37 per share placed by the Master upon Skogmo preferred stock was too high. The court notes, however, that this price was the average price of the stock for eight and one-half months following the date of the merger. In fact, this figure was claimed to be the market value of the stock in the complaint filed in Delaware by Nathanson, one of the plaintiffs, and in the complaint filed by plaintiff Gerstle in this court. Accordingly, the objection will be overruled.

(f) *Updating*

The passage of time and the changes effected by the court's rulings, including the increase in the ceiling on the post-merger cash losses allowed the defendant, will necessitate a change in the recalculation of the amounts due plaintiffs together with interest to August 25, 1972, and the credits due defendant together with dividends and interest to August 25, 1972. Upon this point, it should be noted that interest, despite the defendant's objection, should be computed from October 17, 1963 and should be predicated upon the averages of cash balances at the beginning and the end of each three-month period.

In closing, the court wishes to record its disapproval and disappointment in the endless delay in the rendition by the defendant of the final accounting. While the accounting has been somewhat complex, most of the delay has been caused by the defendant's constant change of theories, positions and claims, and also, to some extent, by the unreasonable, exaggerated and unsupportable claims asserted by the plaintiffs. This procedure was inexcusable and time consuming and occurred on four occasions: (1) at the hearings before the Master on the first accounting in the 1969 Decree; (2) at

the hearings before the court and in the briefs on objections to the Master's first report; (3) at the hearings before the Master on the second accounting in the 1971 Decree; and (4) at the hearings before the court and in the briefs on objections to the Master's second report.

As indicated above, the Special Master's report will be and hereby is confirmed in its present form with the exceptions and modifications above noted, and the parties are hereby ordered to present calculations and computations of the sums due the plaintiffs in accordance with the above, as well as a form of judgment which may be entered promptly.

The application of the plaintiffs for fixation of fees and allowances is hereby denied at the present time without prejudice for renewal thereof after adjudication by the Court of Appeals.