Gustave GERSTLE et al., Plaintiffs,

v.

GAMBLE–SKOGMO, INC., Defendant.

Nos. 64–C–1253, 66–C–901.

United States District Court,
E. D. New York.

Oct. 24, 1973.

Emanuel Becker, New York City, H. James Conaway, Jr., Young, Conaway, Stargatt & Taylor, Wilmington, Del., Delaware Counsel, Saul S Freeman, C. P. A., David Berdon & Co., New York City, K. Gordon Green, Nesbitt, Thomson & Co., Ltd., Toronto, Ontario, Canada, Security Appraisers for plaintiffs.

Sullivan & Cromwell, New York City, for defendant; John F. Arning, Charles W. Sullivan, New York City, of counsel.

Louis E. Dolan, Minneapolis, Minn., Gen. Counsel for defendant; Stephen A. Milwid, Lord, Bissell & Brook, Chicago, Ill., of counsel.

A. Edward Grashof, Winthrop, Stimson, Putnam & Roberts, New York City, for John Hanna and others.

BARTELS, District Judge.

This is an application for counsel fees and disbursements, accountants' fees, and expenses of certain assistants engaged by counsel in the prosecution of a minority stockholders' class action against Gamble-Skogmo, Inc. ("Skogmo"), arising out of a breach of fiduciary obligations by Skogmo and certain omissions and misrepresentations in proxy material delivered to stockholders of General Outdoor Advertising Co., Inc.

by Skogmo in support of its merger with the latter corporation. The complaint demanded an accounting and restitution predicated primarily upon a violation of Section 14(a) of the Securities Exchange Act of 1934, as amended ("the Act"), 15 U.S.C. § 78n(a), and Rule 14(a)(9) adopted thereunder, which raised a number of new, difficult and complex questions including the proper remedy for such violation. After many protracted, lengthy and acrimonius hearings, the Court rendered an opinion in 1969, 298 F.Supp. 66 (E.D.N.Y.), holding Skogmo liable to account and to make restitution to the plaintiffs for damages, and referring the accounting to a Special Master to hear and report the amount of damages. After the Special Master had proceeded for almost a year, the defendant belatedly took exceptions to that part of the decree setting forth the format for the computation of damages, to which, in effect it had previously agreed. The case was then returned to the Special Master for computation of damages in accordance with a new and more practical formula, 332 F. Supp. 644 (E.D.N.Y.1971), retaining, however, as a basis, many of the Master's findings. Thereafter, the Special Master made another report fixing the amount of damages, which this Court, in substance, approved with certain modifications, 348 F.Supp. 979 (E.D.N.Y. 1972).

After the entry of judgment on August 25, 1972 for $12,127,751, the case was appealed and as modified with respect to computation of prejudgment interest, was affirmed, 478 F.2d 1281 (2d Cir. 1973). Subsequently, a final judgment was entered on October 15, 1973, in the amount of $10,744,356. The case being ripe for fees and allowances, counsel filed his own application for fees and disbursements and has separately filed independent applications for allowances for those whose services he employed including accountants, as appears from the Appendix appended hereto.

■■ After notice to stockholders, a hearing was held on September 24, 1973,

at which the defendant appeared and objected primarily to the shifting of any portion of the counsel fees and expenses to Skogmo. At the same time there appeared representatives of a relatively small number of stockholders, objecting to the amount requested by plaintiffs, predicated upon excessive hourly charges. As stated in Grace v. Ludwig, 2d Cir., 484 F.2d 1262 at 1267, 1973:

> "At the heart of the doctrine favoring the award of counsel fees in securities cases is the need to encourage the vigilance of private attorneys general to provide corporate therapy protecting the public investor who might otherwise be victimized. See Rosenblatt v. Northwest Airlines, Inc., 435 F.2d 1121, 1124 (2d Cir. 1970). Thus in *Borak* the Court commented upon the practical inability of the SEC to thoroughly and independently examine the veracity of facts set out in proxy materials which, except for private litigant scrutiny, would be undetected until after a merger had been accomplished. J. I. Case Co. v. Borak, *supra*, 377 U.S. 426 at 432–433, 84 S.Ct. 1555, 12 L.Ed.2d 423."

See also J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964); Mills v. Electric Auto-Lite Company, 396 U.S. 375, 90 S.Ct. 616, 24 L. Ed.2d 593 (1970); Rosenfeld v. Black, 56 F.R.D. 604 (S.D.N.Y.1972); Schlesinger v. Wallace, CCH Fed.Sec.L.Rep. ¶ 94,098 (N.D.Ala., April 16, 1973). In making such awards, a distinction must be made between charging costs to a defendant and permitting a plaintiff's counsel to be rewarded from a fund created by his efforts. See *Mills, supra*, 396 U.S. at 392, 90 S.Ct. at 625.

■■ In *Mills* the right to counsel fees was expressly extended to stockholders' class actions brought under Section 14(a) of the Act, forbidding solicitation of votes by a materially misleading proxy statement. In awarding such counsel fees as in other cases, there are a number of factors to be considered including the time spent, the quality of skill demanded by the situation, the ac-

tual skill employed, the amount involved, the result, and the eminence of the lawyer at the bar. See In· re Osofsky, 50 F.2d 925 (S.D.N.Y.1931); Angoff v. Goldfine, 270 F.2d 185 (1st Cir. 1959); In re Continental Vending Machine Corp., 318 F.Supp. 421 (E.D.N.Y.1970). In addition, the contingent nature of the recovery and the difficulties involved must also be given substantial weight.[1] Derdiarian v. Futterman Corp., 254 F. Supp. 617 (S.D.N.Y.1966). As usual, each case depends upon its individual facts and frequently differs from others with respect to the importance to be attached to any particular element. In this particular case, which extended over a period of approximately three and one-half years, novel and difficult questions emerged from the outset relative to recovery for violation of Section 14(a) of the Act and proxy rules issued thereunder. The nature of the remedy to be applied was also an important issue. At the time of the trial Mills v. Electric Auto-Lite Company, *supra*, had not yet been decided, and this case was the first which fixed liability for violation of the proxy requirements of the Act, as well as the right to counsel fees and expenses to be allowed. While computation of the compensation based upon the time involved by counsel in obtaining recovery results in an unusual and extraordinary rate of compensation, emphasis here must be placed upon the amount recovered.[2] See In re Osofsky, *supra;* Derdiarian v. Futterman Corp., *supra;* Newman v. Stein, 58 F.R.D. 540 (S.D.N.Y.1973).

In making awards of this character including all expenses, some courts have used as a measuring rod a percentage of the amount of recovery, which ranges between 20% and 30% of the recovery.[3] Pergament v. Kaiser-Frazer Corp., 224 F.2d 80 (6th Cir. 1955); Schlusselberg v. Keystone Custodian Funds, Inc., CCH Fed.Sec.L.Rep. ¶ 93,901 (S.D.N.Y., Mar. 15, 1973); Siegel v. Realty Equities Corp. of N. Y., CCH Fed.Sec.L.Rep. ¶ 94,102 (S.D.N.Y., July 30, 1973). In other cases where the amount of the recovery has been large, courts have applied a descending scale of percentages amounting to less than 20%. See Newmark v. RKO General, Inc., 332 F.Supp. 161 (S.D.N.Y.1971); Newman v. Stein, *supra*; Cherner v. Transitron Electronic Corp., 221 F.Supp. 55 (D.Mass.1963), *aff'd sub nom.,* Green v. Transitron Electronic Corp., 326 F.2d 492 (1st Cir. 1964); Angoff v. Goldfine, *supra*; Winkelman v. General Motors Corp., 48 F.Supp. 504 (S.D.N.Y.1942), *aff'd sub nom.,* Singer v. General Motors Corp., 136 F.2d 905 (2d Cir. 1943). In cases of this type, the Court must walk a narrow line between being too niggardly on the one hand, and resorting to vicarious generosity on the other. Smolowe v. Delendo Corp., 136 F.2d 231 (2d ·Cir. 1943); In re Gilbert, 276 U.S. 294, 48 S.Ct. 309, 72 L.Ed. 580 (1928). Obviously, fees and allowances cannot be quantified or calculated with any mathematical precision. But in making such allowances, after considering all the pertinent factors, it is proper for the Court to take some guidance from the relative percentage of the fees to the recoveries utilized in other cases. With this back-

---

1. G. Hornstein, Legal Therapeutics: The "Salvage" Factor in Counsel Fee Awards, 69 Harv.L.Rev. 658, 669 (1956).

2. Emanuel Becker, the principal attorney for the plaintiff class, claims to have worked 7,250 compensable hours on this litigation. His application for $3,000,000 therefore amounts to a request of about $414 an hour. Included within the total of 7,250 hours, however, is a general claim of 1,500 hours for "telephone calls, general correspondence, supervision of work of experts not hereinabove accounted for." In this Circuit, attor-

neys are required to keep careful records of the amount of time expended in working on cases such as the present one and thus, when only general estimates of unrecorded time have been submitted, Courts have given little weight to same. Derdiarian v. Futterman Corp., 254 F.Supp. 617 (S.D.N.Y.1966); In re Borgenicht, 470 F.2d 283 (2d Cir. 1972). If the 1,500 hours are eliminated, Becker's request averages out to almost $522 an hour.

3. Cole, Counsel Fees in Stockholders' Derivative and Class Actions—Hornstein Revisited, 6 Richmond L.Rev. 259 (1972).

ground in mind, the Court is prepared to first consider separately an allowance to Emanuel Becker as counsel, together with his ordinary disbursements. The Court believes that $1,600,000 together with disbursements would be fair and reasonable compensation to counsel.

The applications of the accountants and other retainers employed by counsel are not subject to the above considerations since they have no standing to apply directly to this Court. Reference is made to the applications of David Berdon & Co., accountants; Shufro, Rose & Ehrman, investment firm; Martin J. Whitman, financial consultant, for services and testimony; Nesbitt, Thomson and Company, Ltd. for services and testimony; Mathematica, Inc., relating to interest calculations; and H. James Conaway, Jr. of Young, Conaway, Stargatt & Taylor, concerning filing of a complaint and services with respect to a companion complaint filed in Delaware, which the Court will consider *seriatim*, as follows:

 (1) Beginning with the direct application to the Court for accountants' fees, it is the policy of this Circuit not to award fees to accountants directly especially when no order has been entered authorizing their employment. Derdiarian v. Futterman Corp., *supra*; Spillane v. Conway, CCH Fed.Sec.L.Rep. ¶ 93,566 (S.D.N.Y., July 7, 1972). This does not mean that counsel who have employed such accountants should not be awarded as disbursements the expenses of their engagement, but it does mean that the amount of fees they should receive is an issue to be negotiated and agreed upon between counsel and the accountants in advance, subject to the ultimate approval of the Court. Fox v. Glickman Corp., 253 F.Supp. 1005, 1014 (S.D.N.Y.1966). However, we believe it would be unfair not to add to the award to counsel an amount believed to be reasonable to be paid by him to his accountants for services rendered.[4] A fair compensation to the accountants, David Berdon & Co., under the circumstances, should not exceed $300,000.

 (2) With respect to the amount to be allowed to Martin J. Whitman, the Court believes his application, based upon hours spent in rendering his services, is fair. But again it must be noted that counsel should have obtained authority in advance for such employment. Accordingly, the Court will allow as a disbursement $30,000.

(3) Referring to the application of Nesbitt, Thomson and Company, Ltd., as set forth in the affidavit of K. Gordon Green, the Court again believes that this application, predicated upon number of hours, should have been authorized in advance. However, upon equitable principles, the Court will allow as a disbursement for this purpose $56,000.

4. David Berdon & Co. has requested $600,000 for 3,658 hours of work, the equivalent of $164 an hour. Of the total amount requested, only $300,000 is predicated on time spent, the other $300,000 is sought as compensation for the risk of undertaking the work on a contingent basis, for the unusual difficulty of the work, for the unforeseeably prolonged length of the litigation and for thinking time required to consider the complex accounting problems, which time is not billable under normal business practices. We believe, however, that only attorneys must be rewarded directly by the Court for the risks associated with undertaking an action such as the present one on a contingent basis. The Court can exercise far greater control over the conduct of the attorney than it can over an accountant and it has far greater expertise in evaluating the quality of the attorney's performance. Of course, the attorney and the accountant may agree to an engagement on a contingent basis. In that event, the accountant can be paid the higher premium necessary to compensate him for his undertaking difficult work with the risk of no payment by his sharing in the attorney's contingent recovery. We have noted also that of the 3,658 hours claimed, 900 hours were the work of staff assistants of David Berdon & Co. and, of course, are to be reimbursed at a lower rate than a senior partner, such as Saul Freeman. Further, for the reasons indicated in footnote 2, we attach little weight to the claim of 100 hours based on estimates of unrecorded time. We believe that under these circumstances $300,000 would be a most generous allowance.

(4) In reality, the Court finds no real substance to the application of Mathematica, Inc., inasmuch as it only refers to services relating to interest calculations without any specifics. Therefore, the Court will make no allowance as a disbursement of any sum to Mathematica.

(5) As to the application of H. James Conaway, Jr. of Young, Conaway, Stargatt & Taylor for legal services in preparing a complaint and for consultation in connection with the action filed in Delaware, the Court after examination of the affidavit will allow $18,000 as a disbursement of Emanuel Becker.

(6) With respect to Shufro, Rose & Ehrman for information and statistical analysis furnished to plaintiffs' counsel before the action was initiated, this Court finds no basis for any allowance as a disbursement. The services rendered by them were primarily to their own clients. In all events, the connection between these services and the ultimate recovery is so remote that they cannot be recognized by this Court. Again, these alleged expenses are a matter solely between them and plaintiffs' counsel.

The above allowances as disbursements amount to $404,000, which sum will be added to the $1,600,000 allowed to Emanuel Becker as counsel (excluding his disbursements), so that the final award will total the sum of $2,004,000, or 18.7% of the amount of recovery, plus Emanuel Becker's disbursements. This amount was not the result of an across-the-board application of a percentage figure but, instead, the result of the totality of appraisals of the factors above mentioned.

Settle order on notice, providing the necessary mechanics for computing and delivering to the stockholders the remainder of $8,740,356.

II

In view of the manner in which this case was tried, it becomes necessary for the Court to ascertain what portion, if any, of the foregoing allowances should be charged to the defendant due to dilatory and vexatious tactics unnecessarily increasing the difficulties of the trial and the time spent for its completion. It is appropriate in this connection to make mention of the Court's observations in its 1972 opinion, 348 F. Supp. 979, at 981–982, as follows:

"The parties wrangled every inch of the way, which in turn caused considerable delay. Throughout the hearings before the Master, and to some extent at the hearings confirming the Master's report, a certain amount of confusion resulted from the habit indulged in by the defendant of producing exhibits and recalling them to make additions and corrections. One clear example of the repeated modification and revision of exhibits is the defendant's Exhibit M–228 submitted for the purpose of documenting the defendant's claimed post-merger cash losses. During the 1967–1970 hearings as well as during the 1971 hearings, said Exhibit was subject to constant changes, each time on the ground that an error had been discovered. Eventually Exhibit M–228 as revised gave way to a new Exhibit, M–304. This in turn was subsequently modified as M–304–A. Despite the many revisions in the post-merger cash loss exhibit over an extended period, defendant, before the Special Master at the close of the 1971 hearings, argued that there was a newly found error, relating back to M–228, of some $163,420.

"Numerous other examples of changed exhibits (including the underlying accounting, M–1, subsequently changed to M–1–A) could be provided. However, suffice it to say that the parties, and in particular the defendant, have not made the task of the Special Master, or of this court, any easier by urging repeated revisions even up to the last moments of this proceeding. The defendant had the burden of presenting the accounting material, since the records were wholly within

its control, and the Master was extremely patient and tolerant in permitting the corrected exhibits. It was a most difficult task for the Master, and his report demonstrates his competence."

and again, at p. 987:

"In closing, the court wishes to record its disapproval and disappointment in the endless delay in the rendition by the defendant of the final accounting. While the accounting has been somewhat complex, most of the delay has been caused by the defendant's constant change of theories, positions and claims, and also, to some extent, by the unreasonable, exaggerated and unsupportable claims asserted by the plaintiffs. This procedure was inexcusable and time consuming and occurred on four occasions: (1) at the hearings before the Master on the first accounting in the 1969 Decree; (2) at the hearings before the court and in the briefs on objections to the Master's first report; (3) at the hearings before the Master on the second accounting in the 1971 Decree; and (4) at the hearings before the court and in the briefs on objections to the Master's second report."

The Court is also mindful of the statements made by the Court of Appeals in its affirmance in 478 F.2d 1281, at 1308–1310 (2d Cir. 1973), with respect to the charge of at least a portion of plaintiffs' counsel's fees and expenses against Skogmo. If there is to be any such charge, it must be predicated upon the principles enunciated in the opinion of the Court of Appeals and not for any punitive purpose. Accordingly, the Court will set down for a prompt hearing, subject to consultation with counsel, to determine what amount, if any, of the foregoing allowances should be paid directly by the defendant. In order to prevent further delay, this hearing can take place after the stockholders of Skogmo have received their pro rata portion of the remainder of the recovery after deducting the foregoing allowances. If a portion of these allowances is chargeable to the defendant, a second check for the stockholders' pro rata amount thereof may be mailed to them.

So ordered.

## APPENDIX

Application for allowances and fees filed by Emanuel Becker, counsel for plaintiffs:

1. Emanuel Becker, attorney for plaintiffs, for

| | | |
|---|---|---|
| services | $3,000,000.00 | |
| disbursements | 4,817.44 | $3,004,817.44 |

2. David Berdon & Co. (by Saul S. Freeman), accountants, for services predicated upon time spent

| | | |
|---|---|---|
| | $300,000.00 | |
| plus an additional | 300,000.00 | |

for special circumstances, aggregating a total of 600,000.00

3. Shufro, Rose & Ehrman (by Salwyn Shufro), investment firm, whose customers had purchased stock of General Outdoor Advertising Co., Inc., for information and

statistical analysis in assisting Emanuel Becker to prepare plaintiffs' complaint before suit ............ 100,000.00

4. Martin J. Whitman for services as financial consultant and expert testimony rendered to Emanuel Becker in connection with the hearings before the Special Master including testimony re Stedman & Co. and obtaining the services of Dr. Nevis Baxter of Mathematica, Inc. (relating to interest rates) and of Nesbitt, Thomson and Company, Ltd. (relating to the value of Claude Neon) ............ 30,000.00

5. Nesbitt, Thomson and Company, Ltd. (by K. Gordon Green) for services and testimony before the Special Master relating to Stedman Bros., Ltd., MacLeod's Ltd., and Claude Neon Advertising Ltd. ... $51,700.00
 Disbursements ....... 5,148.14 ... 56,848.14

6. Mathematica, Inc. (general affidavit by John J. Katsock without specification, presumably relating to interest calculations) for services ....... 7,277.50
 Disbursements ....... 295.79 ... 7,573.29

7. H. James Conaway, Jr. and Young, Conaway, Stargatt & Taylor, a Delaware law firm, for services in connection with companion litigation in Delaware, entitled "M. Martin Nathanson, Raoul L. Rousseau and Wilma L. Rousseau v. Gamble-Skogmo, Inc.," which was subsequently consolidated with the above-entitled case, including disbursements ............ 35,000.00

$3,834,238.87